## KOHN & WEIL v. THE FIRST NATIONAL BANK OF FORT SCOTT.

PAROL CONTRACT, *to be Responsible for Moneys Paid to Agent, on Agent's Draft.* Where K. & W., by a parol agreement with a certain bank, promise that if the bank will cash a certain draft to be drawn by and in the name of a certain agent of theirs upon S. L. & Co., that said K. & W. will be responsible for its payment, and afterward such agent does draw such draft and the said bank cashes the same, and afterward said draft is dishonored by said S. L. & Co.: *Held,* That the bank may maintain an action to recover from said K. & W., on said parol promise, the amount paid out on said draft, with interest.

*Error from Bourbon District Court.*

ACTION by the *First National Bank,* to recover from *Samuel Kohn* and *Jacob Weil,* as partners, certain moneys paid to one Ruhman as their agent. The facts are fully stated in the opinion. The *Bank,* at the September Term

1873, (C. W. B., judge *pro tem.*, presiding,) recovered judgment for $1,108.89, and costs, and *Kohn & Weil* bring the case here for review.

*Hulett & McCleverty*, for plaintiffs in error:

The bank seeks to recover upon the ground of a parol promise and agreement alleged to have been made by the defendant Weil, to McDonald, president of the bank, in a conversation with said McDonald, to the effect that Ruhman was to act as agent of Kohn & Weil at Fort Scott, in the purchase and shipment of hides, etc., to be shipped by Ruhman for their account, to Taussig, Livingston & Co., St. Louis, and that the bank might cash Ruhman's drafts upon Taussig, Livingston & Co., to the amount of $1,500, and Kohn & Weil would be responsible therefor. It was further alleged that Ruhman drew this draft as the agent of Kohn & Weil, and in and about their business; that the bank had cashed the draft upon the faith of the alleged promise, forwarded it for collection, and that it was returned protested for non-acceptance and non-payment; that the amount paid to Ruhman was used by him in and about the said business of Kohn & Weil. The defendants admitted an agency in Ruhman, but limited, and of the extent of which the bank had notice, but alleged that no promise in writing had been made to the bank, or that any *such* promise had been made, and denied generally all allegations.

1. The court erred in admitting the conversation detailed by McDonald, over the objection of the defendants. If the defendants could be charged as acceptors of this draft, by reason of the alleged promise, then it must have been in writing. A promise to accept, to amount to an acceptance, must be in writing; Gen. Stat., 115, §§ 8, 9, 10; 2 Wheat. 66; 9 N. Y. 435; 1 Pet. 264; 4 Pet. 111; 15 Johns. 6; 4 Mich. 450; 8 Mich. 132; 5 Duer. 373. These cases hold that such a promise, if in writing, amounts to an acceptance, provided however, that the terms of authority are strictly followed. That a parol promise to accept, is not binding,

see 9 N. Y. 435; 5 Duer. 373. But if this action is intended to bind Kohn & Weil for the default or failure of Taussig, Livingston & Co. to honor this draft, or of Ruhman to pay it, then the statute of frauds would require the promise to be in writing; so that in any view, parol testimony would be incompetent, and the court erred in admitting it.

2. We think however that the conversation detailed by McDonald does not by any fair construction of language constitute a promise. All it does show was, that Ruhman was to act as agent of Kohn & Weil, and, to provide funds, could draw on Taussig, Livingston & Co., not more than $1,500. McDonald says, "I was authorized to pay to that extent." Does not that simply disclose the fact that a limited agency existed? If limited, then all persons were required to acquaint themselves with the extent of the agency. Taussig and his book-keeper swear that Ruhman had already overdrawn about $1,450, so if Ruhman, as the agent of Kohn & Weil, could only draw to the extent of $1,500, as McDonald says, then this draft even if it had been in proper form was rightly protested. If an agent exceeds his authority, the principal will not be bound: 8 N. Y. 398: 1 Sandf. 265.

The witness Osbun, who cashed the draft, testifies that nothing was said between him and Ruhman at the time the draft was drawn. The draft register shows that the draft was charged, not as the draft of Kohn & Weil, but as the draft of Ruhman. Not a syllable of the evidence tends to show that this draft was in any way connected with the business of Kohn & Weil, but shows beyond doubt that the bank treated it as if it was the draft of Ruhman, drawn by him for his own personal benefit, and charged against him individually, until the bank, by this action, seeks to bind third parties, whom they have not in any way connected with the transaction. Had this draft been signed by Ruhman as agent of Kohn & Weil, and in such a manner only as an agent must sign in order to bind his principal, then of course it would have devolved upon the alleged principals, by way of

defense, to show either that Ruhman was not their agent, or that he had not acted for them, or within his powers; but this draft, being at least *prima facie* the draft of Ruhman, with nothing about it to show agency for any one, we submit that it must require more evidence than simply that Ruhman had drawn this draft, and the bank teller paid it, without either exchanging a word, in order to bind Kohn & Weil. The draft being executed by Ruhman individually, it is not any evidence against Kohn & Weil; and no evidence tending to bind Kohn & Weil upon such a draft would be proper, since it would be contradicting a written instrument by parol; 7 Wend. 68. "No person in making a contract is considered to be the agent of another, unless he stipulates for his principal by name, stating his agency in the instrument he signs;" 11 Mass. 27; Story on Agency, §§ 147, 154, 161; 1 Pars. on Contr. 54. In 9 N. Y. 571; 5 Gray 561, 567, and 17 Ohio St. 125, it is decided that, even where an agent executes commercial paper in his own name, though he discloses his principal, still it is only the contract of the agent and not of the principal, though the principal may have had the benefit of it. So all evidence in this case was improper, and the petition does not even state facts sufficient to constitute a cause of action.

*McComas & McKeighan,* for defendant in error:

The court substantially instructed the jury that if they found the facts as detailed by witnesses for the bank, they should find for it; if as detailed by Weil, against the bank. The jury found for the bank; and that finding disposes of the questions of fact.

This is not an action on an acceptance, and hence the argument of counsel, and cases cited on this point, have no application. The statute of frauds, however, is one of the defenses set up in defendant's answer, and urged in the instructions asked below, though apparently abandoned in the argument. The agreement of K. & W., that they should be responsible for all money advanced on drafts drawn by T. L. & Co., was

not a promise "to answer for the debt, default or miscarriage of another." It was not a collateral, but an original undertaking, the promise being that if the bank would advance money to K. & W. through their agent, on his drafts, they would be responsible. The advantage to be gained, ran to K. & W., and not to Ruhman, or the Bank. (22 Howard, 28, 43; 2 East, 325; 2 Peters, 170.) But even if this was an action on a failure to accept, we do not think it would come within the provision of our statute relating to bonds, notes and bills. That provides, "that no person within this state shall be charged as an acceptor of a bill of exchange, unless his acceptance shall be in writing." Gen. Stat. 115, § 8. This provision would hardly excuse the nonperformance of a promise to a bank or other person to accept a draft if such bank or other person would advance money to the drawer on the draft. The consideration of the advance being the promise to accept, a promisor would, we think, be forced to make it good.

It is claimed that this action cannot be maintained, because it is an attempt to charge persons, other than as shown by the draft. It is not an action to charge Kohn & Weil as parties to the draft, but an action on their original promise, and for money had and received by the principals, K. & W., through their agent, Ruhman. It makes no difference to the bank what Ruhman did with the money. The bank was not their agent, and could not follow it, and see it properly applied; and whether it was or not properly used, the record does not show. This is the true test, viz., that where the written instrument is merely used among other things, as evidence, to show the right or liability, the party really liable may be sued. 2 Pars. on Contr. 56, note.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on an alleged parol contract entered into between the First National Bank of Fort Scott, and the firm of Kohn & Weil. The alleged contract was made on the part of the bank by B. P. McDon-

ald, its president, and on the part of Kohn & Weil by Jacob Weil, a member of the firm. At the trial of this case in the court below, both McDonald and Weil testified with regard to what said contract was; and there was but very little if any other evidence with reference thereto. McDonald and Weil differed in some respects with regard to the terms of the contract. But as the whole case was fairly submitted to a jury, and as the jury found a general verdict in favor of the bank, and against Kohn & Weil, we must now presume that the contract was just what McDonald testified that it was. The jury made no special findings, and there is nothing else in the record than what we have mentioned that would tend to impeach the general verdict of the jury. Then, upon the theory that the contract was just what McDonald testified that it was, the principal facts in the case are substantially as follows: During the winter of 1872, Kohn & Weil, of Leavenworth, were general dealers in hides, wool, etc., and William Ruhman was their agent for such business at Fort Scott. Weil went to the bank of the plaintiff below, and told McDonald that Ruhman was going to purchase hides, etc., exclusively for their firm, and ship the same to Taussig, Livingston & Co., St. Louis, Missouri; and in order to obtain funds for such purpose, Ruhman would draw drafts on Taussig, Livingston & Co., not to exceed $1,500 at any one time, and that if the bank would cash such drafts they, Kohn & Weil, would be responsible for their payment. McDonald, for the bank, agreed to cash said drafts. Afterward Ruhman drew the following draft, to-wit:

"$1,000.00.          FORT SCOTT, February 17th, 1872.

"Pay to the order of First National Bank, Fort Scott, One Thousand Dollars, value received, and charge same to account.                    ℱ          W. RUHMAN,"

"To Taussig, Livingston & Co., St. Louis."

The bank cashed this draft, then sent it to St. Louis, where it was presented to Taussig, Livingston & Co., who refused to pay it. It was then duly protested and sent back to the bank at Fort Scott. The bank then commenced this

action against Kohn & Weil, asking judgment for the amount of the draft, with interest, protest fees, damages, and costs. The facts are all fully set forth in the plaintiff's petition. And therefore, if the plaintiff may recover at all, if the bank has any cause of action against Kohn & Weil on the foregoing facts, the plaintiff may recover in this action. The objections to a recovery seem to be about as follows: 1st.–No action can be maintained against Kohn & Weil on the draft, for they are not parties thereto, either as drawers, acceptors, or indorsers. 2d.–No action can be maintained on the parol contract, because, first, it does not purport to make Kohn & Weil acceptors of the draft, and could not, if it did; for an acceptance, or agreement to accept, must be in writing; (Gen. Stat. 115, §§ 8, 9, 10;) second, the contract is void, being in contravention of § 6 of the statute of frauds, (Gen. Stat. 505,) which requires that all promises to answer for the debt or default of another shall be in writing. There are perhaps some other objections made, but they are based upon what counsel think the facts ought to be, and not upon what the record actually shows them to be. For instance, counsel for Kohn & Weil would take the parol contract as Mr. Weil testified that it was, while we must take it as Mr. McDonald testified that it was. We do not think that any of the objections, or all of them taken together, are sufficient to defeat a recovery. In order to hold Kohn & Weil liable, it is not necessary to consider them as parties to said draft. They were certainly not parties on the face of the draft, and yet their agent was; and generally, where an agent does business for an unnamed principal, he makes the principal as well as himself liable. (*Wolfley v. Rising,* 12 Kas. 535; *Butler v. Kaulback,* 8 Kas. 668, 674, et seq.) No one claims that Kohn & Weil were acceptors of the draft, or that they ever agreed to accept it. Taussig, Livingston & Co. are the only persons who could have accepted the draft, before it was dishonored, and no one would suppose that a contract would be made before a draft were drawn for any person to accept such draft. "*Supra protest.*" Said parol contract is not

M. K. & T. Rly. Co. v. City of Fort Scott.

void as being in contravention of § 6 of the statute of frauds. (*Townsley v. Sumrall*, 2 Peters, 170; 181, 182.) It is an original promise of Kohn & Weil, that they will pay their own debt contracted by their agent Ruhman, if Taussig, Livingston & Co. do not pay it.

The bank took judgment in the court below for merely the amount of money paid out by the bank on the draft with seven per cent. interest per annum. This judgment will be affirmed.

All the Justices concurring.