## LEAVENWORTH, LAWRENCE & GALVESTON RLD. CO. v. COMM'RS OF DOUGLAS COUNTY.

1. MOTION—*Part of the Record.* A motion to require a pleading to be made more definite and certain, is a part of the record, and need not be incorporated in a bill of exceptions.

2. PETITION; *Fraud; Facts must be Stated.* The rule is, that when fraud is charged and made the basis of recovery, a mere general allegation of fraud is insufficient. The facts showing the fraud must be stated.

3. ACTS OF PUBLIC OFFICERS—*Obligatory, and Discretionary—Motive, and Intent.* It is generally true, that when an act is obligatory upon a public officer it is immaterial with what motives he does the act, although thereby an obligation is cast upon the public; and the public is bound, although money was paid to the officer to induce him to act; and no cause of action is stated on behalf of the public, and against the party in whose behalf the act is done, by an allegation that the act was done in pursuance of a fraudulent and corrupt combination and conspiracy between such party and the officer. And it is also generally true, that when the doing of an act of like effect upon the public is not obligatory, but intrusted to the discretion of the officer, the public is not bound if the act was induced by the corruption of the officer, and may recover of the party so inducing the act.

4. ———— *Allegations of Fraud; Specific Statements of Facts Required.* Where the allegation in a petition in such an action is only in general

12—18 KAS.

teŕms, that there was a fraudulent and corrupt combination and conspiracy between such party and the officer, and that the act was done in pursuance of such combination and conspiracy, the party has a right, upon motion, to have the petition made definite and specific by a statement of the facts showing the terms, nature and extent of the conspiracy, and is not compelled to go to trial upon the mere general allegation that there was a combination and conspiracy.

5. MUNICIPAL-AID BONDS, *Valid.* Whatever may be individual opinions, it is at the present the settled policy of this state to. tolerate the issue by municipalities of bonds in aid of railroads, and the settled law that bonds so issued, if issued in pursuance of express authority and in accordance with the prescribed forms, are valid.

6. ———— *Express Authority Required to Issue.* While the power to issue railroad-aid bonds is not one of the ordinary powers of a county, requires express authority, and must be exercised in conformity to prescribed forms, it is not penal in its nature, and the validity of its exercise does not demand all the strictness of the ancient rules of the criminal law.

7. ———— *Waiver of Conditions; Payment of Interest; Ratification.* While it is true, that authority to the commissioners of a county to issue railroad-aid bonds upon compliance with certain specified conditions carries with it no authority to waive any of the conditions, yet, when there is a failure on the part of the railroad company to comply with one of the conditions in some minor respect, and notwithstanding the failure the commissioners acting in good faith issue the bonds of the county, and the failure is in a matter which is of public knowledge, a failure by the county to make any objection, or take any proceedings, and payment for a series of years of the interest on the bonds, will work a ratification of the action of the commissioners and prevent the county from thereafter recovering of the railroad company the bonds, or their value.

8. PLEADING; *General Allegations; Motion to make Definite and Certain.* On 6th February 1867, the qualified electors of Douglas county duly authorized the commissioners to subscribe to the stock of the Leavenworth, Lawrence & Galveston Railroad Company, and issue the bonds of the county in payment thereof. Several conditions were prescribed in the authority thus granted, among them, one that the company should complete and equip twenty-four miles of railroad track before the 1st of January. 1868. All the conditions were complied with except that the twenty-four miles were not completed by January 1st 1868, nor for some time thereafter, though the exact time is not disclosed. In July 1869, the county commissioners issued the bonds, and received the stock. In January 1870, the term of office of the then county commissioners expired. The coupons on these bonds falling due in January 1870, and January 1871, were duly paid. No action or proceedings was had by the county in any form to question the validity of the action of the com-

missioners in issuing the bonds, until August 1871, when this action was brought against the railroad company to recover the value of the bonds *Held*, That if the commissioners acted in good faith, honestly, and in obedience to their unbiased judgment as to the best interests of the county, the action cannot be maintained; and if it be claimed that they fraudulently and corruptly combined and conspired with the railroad company to defraud the county, and the issue of the bonds was in pursuance of such combination and conspiracy, the petition should state the facts showing the terms, nature and extent of the combination and conspiracy, and not simply allege in general terms that there was such a combination and conspiracy; and that as the latter were the only allegations, a motion to make the petition more definite and certain ought to have been sustained.

9. FINDINGS, IN WRITING, *Should be Made, and Recorded.* In every case tried by the court there should be a finding in writing, upon which to predicate and rest the judgment, and omission of such finding is error. But doubted, whether such error is fatal to the judgment, or sufficient to compel a reversal.

### *Error from Douglas District Court.*

ACTION by the *Board of Commissioners of Douglas County*, to recover from the *Railroad Company*, the par value of certain bonds issued by said county to said company in payment of subscription to the stock of the company, to recover back certain interest-money paid on said bonds, and to compel the surrender for cancellation of certain bonds not negotiated. Trial at the May Term 1875. Judgment in favor of the plaintiff for $489,539.43, and costs. The *Railroad Company* brings the case here on error. The opinion, *infra*, contains a full statement of the facts and proceedings. (No briefs have come to the hands of the reporter.)

*S. O. Thacher*, and *Wallace Pratt*, for plaintiff in error.

*S. A. Riggs*, *W. W. Nevison*, and *Nelson Cobb*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action to recover a money judgment for the value of certain bonds and coupons claimed to have been wrongfully issued to the plaintiff in error, defend-

Statement of facts.

ant below. The case was tried by the court without a jury, and judgment rendered in favor of the defendant in error, for $489,539.43, to reverse which this proceeding in error is brought. The testimony was not preserved, so that no question of fact is presented for our consideration. No bill of exceptions, or case-made, was signed, so that the case stands before us with only those matters which of themselves go upon the record. Several errors are alleged — first, in denying a motion to make the petition certain and specific; second, error in rendering a judgment without any finding, general or special, upon which to predicate it; third, the petition stated no cause of action; fourth, the statute of limitations barred all right to relief; fifth, the amount of the judgment was excessive. The petition was in these words:

( *Court, and Title.*) The petition of the plaintiff for cause of action shows to the court: First, that the defendant is a corporation created by the laws of this state; second, that pursuant to a resolution passed by the "Board of County Commissioners of the County of Douglas," on the 15th of January 1867, ordering a special election therefor, the said board of county commissioners submitted to the voters of said county of Douglas, the question of issuing bonds to said defendant, in words and figures as follows, to-wit:

"SPECIAL ELECTION! — *To the qualified Electors of Douglas County.*—You are hereby notified that a special election will be held at the several voting precincts in said county, on Wednesday, February 6th, 1867, to vote on the following questions, to-wit:

"1st.-Shall the county of Douglas subscribe Three Hundred Thousand Dollars in full-paid stock to the capital stock of the Leavenworth, Lawrence & Galveston Railroad Company, and issue the bonds of the county therefor, in bonds payable thirty years after date, bearing interest at the rate of seven per cent. per annum from date of delivery, to be issued to said company when twenty-four miles of said railroad track shall be completed and in full operation from Lawrence, Douglas county, via Baldwin City: provided, that no greater amount of bonds shall be issued than the amount of stock issued by said railroad company to the county of Douglas.

"2d.-The condition of the above is with the express understanding and agreement that the said company shall relinquish all claim to the bonds for subscription of stock heretofore voted to said company, to-wit, the 12th of September 1865.

"Ballots to be printed or written: Shall the county of Douglas subscribe the sum of three hundred thousand dollars to the capital stock of the Leavenworth, Lawrence & Galveston Railroad Company, and issue the bonds of the county therefor upon the following conditions, to-wit, said bonds payable thirty years after date, bearing interest at the rate of seven per cent.

per annum from delivery, to be issued to said railroad company upon completion and full operation of twenty-four miles of railroad track from Lawrence, Douglas county, via Baldwin City; provided, that no greater amount of bonds shall be issued than the amount of stock issued by said company to the county of Douglas; and further provided, that said company shall complete and equip twenty-four miles of said railroad track before the 1st of January 1868; and also further provided, that the condition of the above is with the express understanding and agreement that the said company shall relinquish all claim for the bonds heretofore voted to the company, to-wit, on the 12th day of September 1865. 'Yes,' or 'No.' Polls will be opened at nine o'clock A.M. and close at seven P.M.

"By order of the Board of Commissioners of Douglas county."

Third, that afterward, to-wit, on the 6th of February 1867, a vote was taken in said county pursuant to said submission, at which election a majority of the persons voting voted in the affirmative, but that up to the 1st of January 1868, and for some time thereafter, twenty-four miles of said railroad track was not completed or equipped, or in full operation, as in said ballots provided.

Fourth, that afterward, to-wit, on or about the 12th of May 1869, the defendant fraudulently and corruptly induced Geo. Cutter, Geo. W. E. Griffith, and Aaron E. Platts, who then constituted the "Board of County Commissioners of the County of Douglas," and conspired with them, and said commissioners corruptly conspired with the defendant in fraud, of the rights of said county of Douglas, under color and pretended authority of said submission and vote, to issue to the defendant bonds of said county to the amount of three hundred thousand dollars, without the issuing to or the acquisition by said county of any stock of defendant, and without any consideration other than the nominal consideration of one dollar; and for that purpose the said George Cutter, George W. E. Griffith and Aaron E. Platts, and the said defendant, by Wm. Sturges its president, and H. J. Canniff its secretary, executed and mutually delivered an instrument in writing, of which the following is a copy, to-wit:

"This agreement, made and entered into this twelfth day of May 1869, by and between the Leavenworth, Lawrence & Galveston Railroad Company, as party of the first part, and the Board of County Commissioners of Douglas county, state of Kansas, as party of the second part, witnesseth: that for and in consideration of the sum of one dollar, and the further consideration of the surrender to the party of the first part of three thousand shares of stock in the Leavenworth, Lawrence & Galveston Railroad Company heretofore subscribed by the party of the second part on the completion of said railroad twenty-five miles south of the city of Ottawa, in Franklin county in said state, the said party of the first part hereby agrees and binds itself that the city of Lawrence, in said county of Douglas, shall be its present terminal point, and shall forever remain a point on its main line; and second, that the party of the first part further obligates itself that

it shall and will occupy suitable depot-grounds already provided or to be provided by said city of Lawrence, and erect suitable buildings thereon fo the transaction of the business of said railroad company.

"And the party of the first part further obligates itself that the rates of transportation for freight and passengers to and from the city of Lawrence, over said road, shall be as low per mile as the rates of transportation to or from the city of Leavenworth, or to or from any other city or station within the state of Kansas, on the line of said road.

"And in consideration of the above covenants and agreements to be kept and performed by the said party of the first part, the said party of the second part hereby promises and agrees that as soon as the iron sufficient to build twenty-five miles of railroad shall be delivered in the city of Ottawa, Franklin county, Kansas, the said party of the second part shall and will deliver to the party of the first part, or its duly-authorized agent, the three hundred one-thousand-dollar bonds, with the coupons attached, now in possession of the Treasurer of Douglas county aforesaid, in accordance with the conditions of a bond of even date herewith, entered into by Shelton Sturges, Buckingham Sturges, Frank Sturges and Albert Sturges, to the said party of the second part. And the said party of the second part further agrees, that they will surrender the three thousand shares of railroad stock heretofore subscribed by the party of the second part in the said railroad company, in accordance with the provisions hereinbefore mentioned.

" In witness whereof, we have hereunto subscribed our names, and affixed our official seals, on the day and year first above mentioned.

"WM. STURGES, *Prest.* [SEAL.]

"Attest: H. J. CANNIFF, *Secretary.*

[SEAL.]

GEO. CUTTER,
G. W. E. GRIFFITH,
AARON E. PLATTS,
*County Commissioners of Douglas Co., Kansas.*"

That at the same time, and for the same purpose, and as a part of the same transaction, the said defendant made and delivered to said commissioners certificates of stock in said company to the amount of $300,000, and the said commissioners, for the purpose aforesaid, thereupon immediately assigned, released and re-delivered said certificates of stock to the defendant, and the defendant then and there for the same purpose received such release and transfer, well knowing that the same was unlawful, and was a fraud upon the rights of said county; that no subscription for stock of the defendant was ever made by the board of county commissioners of said county, as the plaintiff is informed and believes, and plaintiff alleges that if any subscription *was* ever made it was made pursuant to said fraudulent and corrupt conspiracy, and was void.

Fifth, that afterward, on or about the 9th of July 1869, in furtherance of the aforesaid fraudulent and corrupt purpose, the said commissioners, George Cutter, George W. E. Griffith and Aaron E. Platts, executed and delivered to the defendant three hundred bonds of the said county of Douglas, of the amount of one thousand dollars each, dated January 1st 1868, and payable thirty years after date, with interest at

seven per cent. per annum, payable annually, and with coupons thereto attached for said interest, the coupons for the first year's interest falling due on the first day of January 1869, and the others falling due on the first day of January of each year thereafter until the principal would become due, the coupons falling due each year being for the amount of the previous year's interest on the principal of said bonds; that the said bonds and coupons were made and delivered by the said George Cutter, George W. E. Griffith and Aaron E. Platts, and received by the defendant, without an adequate or valid consideration, or any consideration other than the nominal consideration of one dollar as aforesaid; and that said bonds bore date, and by their terms drew interest from a date long anterior to the issuing thereof and long anterior to the time any subscription was made for stock (if any ever was made), and said bonds were ante-dated by said commissioners and received by the defendant so ante-dated, knowingly, with the fraudulent intent that the said principal and interest should become due and be collectible earlier than they would be if the bonds were dated at the time they were made out, or at the time such subscription was made or to be made.

Sixth, that the coupons on said bonds, calling for the interest thereon for the years 1868, 1869, and 1870, respectively, were, at the time they purported to become due, presented by the defendant to the treasurer of said county of Douglas, and the said interest paid by said treasurer to said defendant, amounting in the aggregate to sixty-three thousand dollars.

Seventh, that said bonds and coupons are in form negotiable, and the same or a portion thereof have been negotiated by said defendant, and transferred to third parties out of this state, but of what portion has been negotiated plaintiff is ignorant.

Wherefore plaintiff prays the judgment and decree of this court, that all said bonds and coupons under the control of the defendant be brought into court and delived to the plaintiff, and that the plaintiff recover in money the amount of all the aforesaid bonds and coupons not so brought into court and delivered to plaintiff, and the amount of money so paid as aforesaid by the plaintiff or the treasurer of said county of Douglas for interest on said bonds, with interest thereon from the date of such payment, and for such other and further relief as may be equitable and just, and the circumstances of the case may require, with costs of this action.

JOHN HUTCHINGS,
*County Attorney for the County of Douglas.*

A motion was thereupon filed by the defendant, to "require the plaintiffs to make their petition more specific and certain, in this, to-wit: .That the plaintiff state the facts showing the fraudulent conspiracy of the defendant with George Cutter, G. W. E. Griffith and Aaron E. Platts, with relation to the bonds in the petition set forth; that the plaintiffs show or state the facts showing that the defendant 'fraudulently and corruptly' induced, and the means whereby they induced, the said Cutter, Griffith and Platts to deliver said bonds in the petition mentioned to this defendant." This motion was overruled, and this is the first alleged error. As a preliminary objection to this, it is insisted that the order overruling the motion does not disclose any particular part of the petition to which the motion was directed; that the motion does not become a part of the record until brought on by bill of exceptions, or case-made; and that therefore we are not advised as to its extent, and must presume in favor of the ruling of the district court, that it was directed to such portions of the petition as are full, specific and certain. In other words, if any portion of the petition is not open to objection in this respect, and the motion only ran to such portion, the court properly overruled it. Error is not presumed; it must be shown. It is not shown that the motion ran to other than the unobjectionable portion; therefore it is not shown that the court erred. We do not consider this objection well taken. It would seem from the order, that the motion ran to the entire petition. It reads:

*Motion to make the petition definite.*

"And now this cause came on to be heard, on the motion of the defendant to make the allegations of the petition more specific; and the parties appearing by their respective attorneys of record, the court, on consideration of said motion, doth overrule said motion — to which ruling of the court the defendant excepted."

"The allegations of the petition," seems to imply all the allegations, and not simply a portion of them. But the motion itself is a part of the record. While it is true, that the authorities cited by defendant in error, or some of them at

**1. Motion is part of record.** least, assert that a motion does not become a part of the record unless brought on by a bill of exceptions, (*State v. Marshall,* 36 Mo. 400; *Cornell v. Davis,* 16 Wis. 686; *Thompson v. Backenstoles,* 1 Oregon, 17,) yet such has not been, we believe, the general understanding of the profession, or the general practice and ruling in the courts of this state. In *McCullagh v. Allen,* 10 Kas.. 150, we held that a motion for a new trial becomes, when filed, a part of the record, and need not be incorporated in a bill of exceptions. And this was but a recognition of the general practice already prevailing in the state. True, the motion is not generally entered upon the journal. Neither are the pleadings. But the judgment based upon the pleadings, and the order made upon the motion, must be. Gen. Stat., p. 707, § 414; page 769, § 705. And can there be any doubt that the pleadings are a part of the record? Again, the law of 1862 required a final record in every case, unless waived; and the laws of 1868 provide for one when ordered by the court. (Comp. Laws 1862, p. 189, § 400; Gen. Stat., p. 707, § 415.) This "record shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court. * * * Evidence must not be recorded." (Gen. Stat., p. 707, § 417.) The words, "all material acts and proceedings of the court," are broad enough to include motions to reform the pleadings. Indeed, it may be stated as a general proposition, that the spirit and tendency of our code of procedure, civil and criminal, is to get onto, and make a part of the record, as much of the proceedings as possible. Notice the provisions as to instructions, and the number of journals and dockets. We conclude then, that the motion, and the ruling of the court thereon, are properly before us for consideration.

Ought it to have been sustained? And if so, was there substantial error in overruling it? The substance of this petition is, that the company obtained the bonds of the county when it ought not to have received them, and ought therefore

**2. Allegations of fraud and conspiracy.** to return them, or their value. It charges that the company obtained these bonds by means of a fraudulent and corrupt combination and conspiracy between it and the gentlemen at that time representing the county as its board of commissioners. Now when this general charge of combination, fraud, and conspiracy is made, the company comes in and asks that the facts may be stated showing this fraud and wrong. Was money paid to these commissioners? and if so, how much? Were a portion of these bonds given to them? and if so, how large a portion? Were lands or other property transferred to them? and if so, what amounts, and when? Were political inducements, or promises of office, or other reward, held out to them? In short, what was this conspiracy, its character, extent, and terms? It is a general proposition, that when fraud is charged, and made the basis of recovery, a mere general allegation of fraud is insufficient; the facts showing the fraud must be stated. In *Capuro v. Builders Ins. Co.*, 39 Cal. 124, the rule is thus declared: "The rule undoubtedly is, that when a party relies upon fraud, either to support his cause of action, or in defense, he must set up the facts which constitute the fraud. It follows, as a necessary consequence of that proposition, that he can prove only those facts which he has set up." See also, *Kinder v. Macy*, 7 Cal. 206; *Simple v. Hagan*, 27 Cal. 166; *Kent v. Snyder*, 30 Cal. 666; *Minday v. Knight*, 3 Hare, 497; *U. S. v. Crafton*, 4 Cent. Law Journal, 442. Mr. Justice McLean, in *Moore v. Green*, 19 Howard, 69–72, says: "When fraud is alleged as a ground to set aside a title, the statute does not begin to run until the fraud is discovered, and this is the ground on which the complainant asks relief. But in such a case, the bill must be specific in stating the facts and circumstances which constitute the fraud; and also as to the time it was discovered. This is necessary, to enable the defendants to meet the fraud, and the alleged time of discovery." In *Williams v. First Pres. Society*, 1 Ohio St. 478–505, it is held, "Where the injury complained of is the result of actual combination and fraud, they must be averred, not in a mere

general manner, but with the same precision that is required in other averments of fact." In this very case the statute of limitations is relied on as a bar, and it is claimed the transactions, whatever they were, took place more than two years before the commencement of this action. The quick and ready reply of the learned counsel for the county is, that the statute commences to run only from the time of the discovery of the fraud. The reply is correct, but instantly suggests the further query—*what* fraud? There can be but one answer, and that is, the fraudulent combination and conspiracy which it is alleged existed, but the nature and terms of which are not disclosed. To obviate this objection counsel say, and we quote from their brief:

"Intent is a pleadable fact, and it is not necessary, nor is it in general proper, to set out the evidence by which that intent is to be proved. And the same is true of intent to defraud. It should be pleaded as a fact; and the evidence to prove it, should not in general be pleaded. The defendant had no right to a motion to require us to show what evidence we proposed to give to sustain the petition. If on the trial we offered evidence of facts which should have been pleaded, the defendant had his right to object; and if his objection was overruled, to except, and bring that exception here, which he has not done. Besides, the facts which we clearly stated, if true, were conclusive evidence of a fraudulent intent and a conspiracy to defraud the county. That the issuing by county officers of county bonds without authority, and without other than a nominal consideration, and the receiving of them by one knowing the facts, and seeking to make them available, is a fraud by both against the county, is an irresistible conclusion of law; and as they are presumed to know the law, the presumption is absolute that they intended to defraud. And as one could not issue and deliver, and the other receive, without mutual agreement, they must have conspired to commit the fraud. Therefore, the proof of the agreement set up, and that it was carried into effect, was sufficient evidence of all the fraud and collusion we charged, and all that was specially set forth in the petition."

And again:

"We call attention to the rule of pleading which we think governs this case. Where conspiracy is alleged, and the pur-

pose to be accomplished is unlawful, it is not necessary to state the means by which the conspiracy was effected. Lord Mansfield, in *Rex v. Turner*, 13 East, 230, uses the following language: 'The conspiracy is stated, and its object. It is not necessary that any means should be stated.' The distinction must be drawn between the case at bar, and that in which the act charged only becomes illegal from the means used to effect it. In this latter case such averments of fact should be made as explain the illegality, or constitute the fraud. See Russell on Crimes, vol. 2, pp. 691, 692."

In other words, the claim of counsel is, that inasmuch as the delivery of the bonds was without due authority, therefore it was done fraudulently, corruptly, and in pursuance of a corrupt conspiracy and combination between the comissioners and the company, and that the phrases asserting fraud, conspiracy, etc., are mere adjective clauses, qualifying the acts distinctively charged. It would follow from this, that if all these mere adjective clauses or phrases were omitted the petition ought still to disclose a complete cause of action; that the acts done would give a just basis for relief, independent of the motives for such acts, and the influences and inducements by which they were accomplished. Or to state it in different language, if the company honestly believed itself entitled to these bonds, and the commissioners honestly believed that the county ought to issue them, and in pursuance of this honest belief, and without other desire than to do and discharge the duties imposed upon them as representatives of the county the commissioners did in fact issue and deliver them, that still the county ought to recover. After giving the matter the most careful consideration we are constrained to hold that the petition does not carry or justify such a construction. Nor did the delivery of the bonds under the circumstances charged, if done honestly, and without fraud, conspiracy, and combination, entitle the county to any relief. The petition plainly alleges that the acts of the commissioners were in pursuance of a fraudulent and corrupt conspiracy and combination between them and the company. It is not consistent with its language, to hold

3. Acts of public officers; motive and intent.

that the commissioners were acting in an attempted honest discharge of their duty, or in honest effort to further and protect the interests of the county whose representatives and agents they were.  It does not simply aver that the acts were in excess, or in contravention, of their authority as agents, and therefore not binding on their principal; but adds, that these acts were done by them in pursuance of a fraudulent and corrupt conspiracy between them and the recipients of the bonds.  As it stands, it does not simply impute error of judgment, or mistaken action; it brands them with personal infamy, and makes this personally-infamous conduct the basis of the county's cause of action.  It is doubtless true, that as to many acts of public officials it is immaterial with what motives or under what influences they are done. Thus, the salaries of the various judges of the district and supreme court are fixed by law.  If at the appointed time the auditor of the state draws his warrant in favor of one of such judges for the salary then due, the act is binding on the public, and it is entirely immaterial what may be passing in his mind, or what motives influenced him, or, so far as the the state is concerned, whether such judge pays him more or less money to obtain the warrant.  No allegation of corruption, conspiracy, fraud, or combination, will give to the state the right to recover the salary thus paid to such judge. Whatever steps he may have taken to acquire the money, he has only obtained that which was legally his due.  On the other hand, for instance, under the laws of 1868 the probate judge received certain fees, and "such ·other compensation as may be allowed by the county commissioners, not to exceed five hundred dollars per annum." Gen. Stat., p. 273, § 85. Here it was not obligatory on the commissioners to make any allowance, or to pay anything out of the county funds. Suppose a probate judge paid to the commissioners personally one hundred dollars, and thus bribed them to allow and pay him out of the public treasury five hundred dollars : can there be any doubt but that the county could recover this five hundred dollars? or that this recovery would be based upon

the fact that the allowance had been obtained by a fraudulent and corrupt conspiracy and combination between the commissioners and the judge? or, that in an action brought therefor by the county, the judge would have a right to insist that the petition should allege, not merely the existence of a fraudulent and corrupt conspiracy and combination, but also its nature and extent? And yet the allowance, if made by the commissioners honestly, and with unbiased judgment, would have been binding on the county. It was not binding, because of the fraudulent combination and conspiracy by which it was obtained. But, say counsel, the facts stated show the fraudulent intent, and the conspiracy; therefore any further statement of the means, nature, and extent of the fraud and conspiracy, was unnecessary.

Let us look for a moment at the facts alleged, omitting all averments of fraud, conspiracy, corruption, and the like: On 6th February 1867, a proposition was submitted to the qualified electors of Douglas county to subscribe for $300,000 stock in the railroad company, and issue a like amount of county bonds therefor. This proposition was carried. By it, authority was given to the commissioners to subscribe for the stock and issue the bonds. The county was not bound as a subscriber, for the vote was no subscription. But it had given authority for the subscription. It had placed this authority in its commissioners. It had given them discretion to bind the county by subscription. If that discretion was honestly exercised, and the subscription actually made, the county (waiving for the present the question of condition) would be bound thereby. If that discretion was not honestly exercised, but the subscription was obtained by the bribery and corruption of the commissioners, the county would not be bound. Nor was a mere formal subscription on the books of the company an essential prerequisite to the issue of the bonds. A delivery of proper certificates of stock by the company to the county at the time of the issue of the bonds, would have been sufficient, and valid, and binding on both parties. And this stock, thus re-

*4. General allegations of petition.*

ceived, was within the power of the commissioners to sell and transfer. *Mo. R. Ft. St. & Gulf Rld. Co. v. Miami County,* 12 Kas. 482. Nor was there any legal objection to the commissioners negotiating and making arrangements to sell the stock prior to its actual receipt. Having determined to issue bonds and receive the stock, it was perfectly legitimate for them, if they deemed it more for the interests of the county to sell than to retain the stock, to make all arrangements for the sale before the actual receipt of the certificates, so that when the certificates were received they might be immediately transferred to the purchaser from the county. There remain therefore but two objections to the binding force and validity of the acts of the commissioners in respect to both bonds and stock, first, that the conditions prescribed in the vote were not complied with, and that therefore the authority to act at all never vested in the commissioners; and second, that there was no adequate consideration for the sale of the stock. Several conditions were named in the submission to the people, and prescribed by the vote. A failure of only one of those conditions is alleged, viz., a failure to complete and equip twenty-four miles of railroad track before the 1st of January 1868. The allegation of the petition is, "that up to the 1st of January 1868, and for some time thereafter, twenty-four miles," etc. How soon thereafter this condition was complied with, is not disclosed — perhaps one day, perhaps a year. Was time, in this, so much a matter of substance that a failure in this respect was an absolute revocation of authority in the commissioners, or, more correctly, an absolute bar to the vesting of any authority in them? or, was it a matter which could be waived by the commissioners, or if not binding on the county when waived by the commissioners alone, yet binding when waived by the commissioners in issuing the bonds and by the people in paying the interest thereon for a series of years? It is doubtless true, that the power to issue bonds in aid of railroads is not one of the ordinary powers of a county. Indeed, in the judgments of many, and among them of the writer of this opinion, it is a power which

can never be granted to a county, or any other municipal organization. This question was brought before this court years since, and the opinion then expressed by the writer has only strengthened with passing years and increasing information. If he may be permitted

5. Bonds in aid of railroads, valid.

to paraphrase the words of the wisest of men, he would say to every one, Look not thou upon the voting of railroad bonds when it is new, for at the last it biteth like a serpent, and stingeth like an adder. But the judgment of the court then sustained the power, and repeatedly since that time has the power been recognized by both the judicial and legislative branches of the government. *City of Troy v. A. & N. Rld. Co.*, 11 Kas. 519; *Lewis v. Comm'rs Bourbon Co.*, 12 Kas. 186; *Gulf Rld. Co. v. Miami County*, 12 Kas. 230; *Railway Co. v. City of Ft. Scott*, 15 Kas. 434; *Railway Co. v. Comm'rs Anderson Co.*, 16 Kas. 302; *A. T. & S. F. Rld. Co. v. Comm'rs Jefferson Co.*, 17 Kas.; *Leavenenworth Co. Comm'rs v. Higginbotham*, 17 Kas. 62; Laws of 1872, p. 110, ch. 68; Laws of 1873, p. 214, ch. 109; Laws of 1874, p. 41, ch. 39; Laws of 1875, p. 44, ch. 39; Laws of 1875, p. 68, ch. 50; Laws of 1875, p. 85, ch. 59; Laws of 1875, p. 190, ch. 125; Laws of 1876, p. 212, ch. 106; Laws of 1876, p. 217, ch. 107; Laws of 1877, p. 190, ch. 141; Laws of 1877, p. 191, ch. 142; Laws of 1877, p. 193, ch. 143; Laws of 1877, p. 194, ch. 144. And the people have accepted these declarations of the legislative and judicial departments as conclusive, and voted and issued bonds to the extent of millions of dollars. Whatever therefore may be individual opinions, it seems clear that at the present we must look upon the issue of railroad-aid bonds as the settled policy, and their validity as the settled law of the state. This power is, as stated, not one of the ordinary powers of a county. It is an extraordinary power, for which express authority is required. *Lewis v. Comm'rs Bourbon Co.*,

6. Authority to issue.

supra. But though an extraordinary power, when attempted to be exercised, the validity of such exercise is to be determined by general rules regarding

municipal action. It requires plain warrant of authority. It must be exercised in conformity to prescribed forms. Nothing is taken by implication. But it is not a penal proceeding, demanding all the strictness of the ancient rules of the criminal law. Its validity does not depend upon the crossing of every $t$, or the dotting of every $i$. Any substantial departure is fatal. Thus, in *A. T. & S. F. Rld. Co. v. Comm'rs Jefferson Co.*, the majority of the qualified electors actually voted against the proposition. In *Lewis v. Comm'rs Bourbon Co.*, the same was true when the proposition was presented by itself, and while afterward an apparent majority was secured to an equivocal indorsement of it, it was only by uniting two propositions, enabling the strength of the one to overcome the weakness of the other, and thus secure a majority for both. There never was a direct and unequivocal assent of the people to the single proposition. In *Railway Company v. Comm'rs Anderson Co.*, the authority granted to the commissioners was never fairly exercised by them. Through the wrongful efforts of the railroad company two of the commissioners were gotten together in an illegal session, and without consultation with the other attempted to bind the county by a subscription of stock and an issue of bonds. The discretion vested in the three commissioners was never exercised, and its exercise was prevented by the wrongful and fraudulent acts of the railroad company.

Now the failure charged against the railroad company in this case, is a failure to complete the specified number of miles of road within the given time; not a failure to complete at all. The work was done, but not when it was stipulated to be done. How great was the delay, we are not informed. One day would satisfy the allegations of the petition. This matter of time was waived by the commissioners, and the bonds were issued. If the commissioners had refused to make the waiver, it is a different question whether the company could have compelled them to make it. But they did waive it, and did issue the bonds. Can this waiver now be repudiated, and the bonds

7. Waiver of conditions.

13—18 KAS.

or their value recovered? But it is said that, being agents, and only agents, the commissioners had no authority to bind the county, the principal, by any waiver. It was not a part of the authority given, which was to do an act upon and only upon certain named conditions. But the failure on the part of the railroad company was in a matter of public knowledge. Whether a railroad is completed to a certain point within a certain time, is a matter which cannot be concealed from public knowledge. Anybody who had any interest in the matter could ascertain for himself. The people generally, the county, the principal in this matter, the obligor and payor of these bonds, had fullest and amplest opportunity and means of ascertaining this fact. Yet with this matter so public and open as this, the county not only raised no question as to this waiver for over two years, not only thus by silence gave consent, but also paid the coupons on these bonds for the two years as they were presented when due, thus in about the clearest way possible acquiescing and ratifying this waiver by their agents.

So far as the other matter is concerned, the adequacy of the consideration for the sale of the stock, we scarcely need do more than refer to the case of the *M. R. Ft. Scott & G. Rld. Co. v. Comm'rs Miami County,* 12 Kas. 482. The completion of an additional twenty-five miles of road, and through rates for local freight and passengers, seem as adequate consideration for the stock as the stock was for the bonds. But it is unnecessary to pursue this branch of the case. From the considerations we have already named, it seems to us that if all allegations of fraud, combination, corruption, and conspiracy, are stricken from the petition, no cause of action remains. There was therefore substantial error in overruling the motion to make the petition more definite and certain, and for this the judgment must be reversed, and the case remanded for a new trial.

The magnitude of the amount involved, the interest felt in the case by the parties, and the effect which it will have as a precedent in other controversies between municipalities and

*Sale by county of stock; consideration.*

8. Specific statements of alleged fraud, required. railroads, have caused us to give the questions involved a most careful examination. We have concluded that, if good faith characterized all the conduct of the commissioners, the county is bound by their action; if fraud and corruption, then the company was entitled to have the facts showing such fraud and corruption fully stated, that it might go into trial knowing specifically what accusations it had to meet. It seems to us that this is right, beyond all mere technical considerations, and independent of all purely legal questions. As it now stands, three citizens of the county, honored by it with official trust, stand branded by the charge of the county and the judgment of the court with personal infamy. A like brand rests upon the officers of the company. It is due to all parties, the county making the charge, the commissioners of the county against whom the charge is made, that there be no indefiniteness in this accusation, but that it be made full, specific, and definite.

Another objection is, that the record discloses no finding upon which to predicate the judgment. The entry on the journal is as follows:

"And the court having duly considered the pleadings, evidence, and arguments, doth adjudge and decree that the board of county commissioners of the county of Douglas, plaintiff, do recover of and against the said Leavenworth, Lawrence & Galveston Railroad Company, defendant, the sum of $489,539.43 damages, and the costs of the plaintiff herein expended."

The statute in reference to findings is section 290 of the code, Gen. Stat., p. 684, and is as follows:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding *except generally* for the plaintiff, or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall *state in writing*, the conclusions of fact found, separately from the conclusions of law."

On the part of the defendant in error it is insisted, that by plain implication of the language, a general finding need not be in writing, and that therefore we must presume that the

court orally announced one; and further, that if
a written finding is required, the omission in
this case is not a substantial error, or one work-
ing any prejudice, as the judgment shows exactly what the
finding was. The plaintiff in error cites very many author-
ities from different states holding that a written finding is essen-
tial, and that a failure in the record to show one is fatal to the
judgment. In addition to this long list of authorities, see a
late case from California, reported in 3 Law & Eq. Rep.,
p. 407, in which the supreme court of that state hold that a
finding "that all the material facts set forth in the complaint
are true," will not support a judgment for the plaintiff. We
are all of the opinion that the statute requires a written find-
ing, and that a failure to incorporate one in the record is
error; and Mr. Justice VALENTINE is inclined to the opin-
ion that such an omission is fatal to the judgment, and of
itself sufficient to compel a reversal, while the Chief Justice,
and the writer of this opinion, are on the other hand inclined
to regard the error, as in a case like the present, working no
prejudice to the substantial rights of the defendant. We do
not deem it necessary to consider any other question.

The judgment will be reversed, and the case remanded for
a new trial.

All the Justices concurring.

*9. Findings, in writing, should be made.* (margin note)