CINCINNATI TRACTION CO. v. COLE et al.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1919.)

No. 3186.

1. FRAUDS, STATUTE OF &#61546;18(2)—PROMISE TO ANSWER FOR DEBT OR DEFAULT OF ANOTHER.

The statute of frauds (Gen. Code Ohio, § 8621), relating to promises to answer for the debt or default of another, does not apply to a promise for a consideration made to the debtor to pay his debt.

2. FRAUDS, STATUTE OF &#61546;34—PROMISE TO ANSWER FOR DEBT OF THIRD PERSON—FUNDS IN PROMISOR'S HANDS.

As the first section of the original statute of frauds provides that no action shall be brought to charge any executor or administrator upon any special promise to answer damages on his own estate, etc., the second section, appearing as Gen. Code Ohio, § 8621, and declaring that no action shall be maintained on a promise to answer for the debt or default of another, unless in writing, etc., does not apply to a promise to answer for the debt of a third person out of such person's funds in the promisor's hands.

3. FRAUDS, STATUTE OF &#61546;33(1)—PROMISE TO ANSWER FOR DEBT OR DEFAULT OF ANOTHER.

Notwithstanding the statute of frauds (Gen. Code Ohio, § 8621), declaring that no action shall be brought on a promise to answer for the debt, default, or miscarriage of another, unless the agreement is in writing, etc., an oral promise to answer for the debt or default of another is enforceable, where the leading object of the promisor was, not to answer for the debt of another, but to subserve some pecuniary or business purpose of his own.

4. FRAUDS, STATUTE OF &#61546;34—AGREEMENT TO ANSWER FOR DEBT OR DEFAULT OF ANOTHER—POSSESSION OF FUNDS OF DEBTOR.

Where a contractor had nearly completed extensive work for defendant, and defendant had retained a large sum already earned, held, that a promise by defendant to pay a lumber company the amount which the contractor owed, by which means the company was induced to furnish more lumber and failed to perfect its lien, though oral, is enforceable, despite the statute of frauds (Gen. Code Ohio, § 8621); it being not only a promise for the benefit of defendant, but a promise to pay the debt out of funds of the contractor.

5. CORPORATIONS &#61546;433(1)—OFFICERS—AUTHORITY.

Where an officer of defendant, known as comptroller, whose duty had to do with its auditing and treasury departments, and who at times acted as treasurer and at others as vice president, made a special promise to pay plaintiffs, who were furnishing lumber to a contractor doing work for the defendant, such officer cannot be held, as a matter of law, without authority.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Action by James O. Cole and others, as executors of Clinton Crane, partners as C. Crane & Co., against the Cincinnati Traction Company. There was a judgment for plaintiffs, and defendant brings error. Affirmed.

&#61546;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Joseph Wilby, of Cincinnati, Ohio, for plaintiff in error.

Charles H. Stephens, Jr., of Cincinnati, Ohio, for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. The positions in the lower court of the parties to this writ were the reverse of what they are here. The trial was by jury, and the principal error assigned is the overruling of defendant's motion for a directed verdict. The motion was not made until after the court's charge to the jury. The right to make it that late is challenged; but, as we hold that the motion was properly overruled, it is not necessary to determine this question. It may be noted, however, that the situation would have been different had the court refused to hear the motion.

[1, 2] The motion was based upon two grounds. One was that the promise, the basis of the action, was one to answer for the debt of another, and, not being in writing or evidenced thereby, was void under the Ohio statute of frauds (section 8621, General Code of Ohio), which is in the usual form of such statutes. We proceed to consider this ground before stating the other.

The promise was claimed to have been made on or about November 9, 1909. If made at all, the conditions under which it was made were these: The Heffron Construction Company had then nearly completed a contract with defendant, made March 30th, previously, by which it was to do certain work on its premises for $15,561.75, of which $9,548.78 had been paid, upon monthly estimates, to an assignee of the Heffron Company, and possibly as much as $2,000 more had been earned, the larger part of which was retained percentage. That company was indebted to plaintiffs in the sum of $2,949.20 for lumber used in that work. Plaintiffs had a right to take out a lien on defendant's premises therefor, which would be unaffected by the assignment or payments thereunder. Section 8334, General Code of Ohio. The defendant, by its contract, had the right to retain out of subsequent payments an amount sufficient to indemnify it against this lien, and, in case of deficiency, had recourse against the Heffron Company and a surety company to make it good.

Plaintiff's evidence tended to show that the making of the promise came about by their refusal to deliver more lumber needed to complete the contract, that it was made in consideration of their promise to continue delivering and not to take out a lien, and that it was to pay plaintiffs, at least conditionally (i. e., if the Heffron Company did not), both for the lumber previously delivered and that thereafter delivered. Thereafter plaintiff delivered lumber which came to $524.71, making the whole amount due them $3,474.06, for the recovery of which the action was brought.

Defendant denied having made such a promise; but it is undisputed that in January, 1910, after plaintiffs had finished delivering, defendant, by letter, absolutely assured them that they would be paid, and their evidence tended to show that they were not advised that it would

not comply with its assurance until it was too late to take out a lien. According to what plaintiff's evidence tended to show, there was a sufficient consideration to uphold defendant's promise. It is not claimed that there was not. It is questioned whether plaintiff's promise, which constituted the consideration thereof, covered the not taking out of a lien. As to this we do not deem it necessary to say more than that we think that plaintiff's evidence justified the conclusion that it did. But the promise to continue to deliver lumber was sufficient of itself to uphold the promise in its entirety, for the plaintiffs were under no obligation to the Heffron Company so to do.

The plaintiff in error bases its contention that the promise sued on was within the statute and hence void, solely upon the fact that, so far as plaintiff's evidence tended to establish the making thereof, it was only a conditional promise; i. e., a promise to pay if the Heffron Company did not. If this did not bring it within the statute, it does not contend that it was within it. The charge of the lower court to the jury presupposed that it was a question for them whether such was the character of the promise. They were told that, if such was its character, there could be no recovery, and that they could find for plaintiffs only in case they determined that the promise was an absolute one; i. e., "to pay—not if the Heffron Company did not pay, but pay anyhow." They were further charged that the written assurance was not sufficient to take the promise out of the statute, for two reasons, to wit, want of authority on the part of the officer of defendant, who had given it, to give it, and the necessity of parol evidence to explain a reference in the letter from plaintiffs, to which it was an answer.

The position of plaintiff in error, that the only promise which plaintiff's evidence tended to establish was a conditional promise, is difficult to combat. The sole witness thereto testified, on cross-examination, that the "precise language" used was, "we will pay this account if Heffron Construction Company does not," and that the language was in substance, "We will see that this account is paid if the Heffron Construction Company does not pay it." His testimony on direct examination is not inconsistent with such having been the language used, and all other pertinent evidence, apart, perhaps, from the absolute assurance referred to, tended to make out a conditional promise; and we will dispose of the case on the assumption that such was the character of the promise. The plaintiff in error is now so cocksure that, this being so, the promise was within the statute and it was entitled to a directed verdict, that we eliminate every other consideration bearing on its being so entitled on this ground, in order that we may meet it where it has chosen to rest its case. Possibly it was not always of this view, i. e., not until after the lower court had charged that, if such was the character of the promise, there could be no recovery. This may account for its not having requested the peremptory instruction until after the jury had been charged.

The plaintiff in error's contention amounts to this: that every conditional promise to pay the debt of a third person is within the statute. Is this so? To answer this question it is necessary to interpret the statute. A statute may be viewed as a symbol. A symbol has

been defined to be "a soul in a body." Rather, perhaps, it should be put that it is a body with a soul. Its phraseology is its body, and its thought is its soul. Sometimes the thought of a statute and its phraseology do not coincide. Where such is the case, it is its thought, and not its phraseology, which is the statute. The sole description of what is covered by the statute here is "a special promise to answer for the debt, default, or miscarriage of another person." We take it that it is the thought of the statute that it is only a conditional promise to pay the debt of a third person—i. e., to pay it if he does not—that is covered by the statute; for it is only such a promise that is a promise to answer for the debt of another within its meaning. It follows that an absolute promise to pay a debt of a third person is not within the statute. Gibbs v. Blanchard, 15 Mich. 292; National Bank v. State Bank, 93 Iowa, 650, 61 N. W. 1065, 57 Am. St. Rep. 284; Lakeman v. Mount Stephen, L. R. 7 Eng. & Ir. App. 17.

In Wald's Pollock on Contracts (3d Ed. by Williston) p. 170, it is said:

"A promise to be primarily liable, or to be liable at all events, whether any third person is or shall become liable or not, is not within the statute, and need not be in writing."

But it does not follow that, because a conditional promise only is within the statute, every such promise is within it, or, to go back to the phraseology of the statute, that because a promise to answer for the debt of another person only is within the statute that every promise to do so is within it. Whether every such promise is within it depends on its thought; for, as stated, the thought of the statute, and it alone, is the statute. A close observation of its phraseology takes note of the fact that it says nothing whatever as to the person to whom the promise is made. Seemingly, therefore, a promise of the character called for, made to any person, is within it. But, indisputably, such is not the case. Amongst the differences as to what is within the statute there is none here. In the case of Eastwood v. Kenyon, 11 A. & E. 438, it was held that a promise for a sufficient consideration made to the debtor to pay his debt is not within the statute. Lord Denman said:

"The statute applies only to promises made to the person to whom another is answerable."

Wald's Pollock on Contracts (3d Ed. by Williston) p. 170, puts it that a promise is not within the statute "unless it is made to the principal creditor."

The case of Eastwood v. Kenyon, decided in 1840, is the first case in which this question seems to have arisen. The position was not argued out. It was taken per saltum. The only possible ground upon which it can be based is that a promise which is not made to the person to whom the third person is answerable—i. e., to the creditor—is not within the thought of the statute. That such a promise is not within its thought suggests that possibly there may be other promises to answer for the debt of a third person which are not within its thought, and hence not covered by the statute. And so we find. The clause of the statute of frauds involved here is the second clause of the orig-

inal statute of Charles II. The first clause thereof provides that no action shall be brought "whereby to charge any executor or administrator upon any special promise to answer damages out of his own estate." These two clauses are found in juxtaposition in the same section of the Ohio statute, but in the reverse order. This first clause expressly limits the promise covered by it to a promise to answer out of the promisor's own estate. This suggests that it is the thought of the second clause that the promise covered by it is a promise to answer out of the promisor's own estate, and that therefore it does not cover a promise to answer out of the debtor's estate which may be in the promisor's hands. It is so held, and as to this, too, there is no difference of opinion. Throop on Verbal Agreements, § 13, says:

"And there is a class of cases under the second clause, not appearing to depend upon its wording, which bears a very close resemblance with respect to the principle which governs them, and the facts calling for its application to a corresponding class under the first clause. We refer to those where the promise to pay the debt of another is held to be good without writing, because the promisor held a fund proceeding from the debtor and applicable to the fulfillment of the promise, in contemplation of which the promise was made. The similarity in the situation of the promisor under such circumstances, and that of an executor or administrator having sufficient assets to pay the debt of the decedent, and who, in consideration thereof verbally undertakes to pay it, is very striking. And the principle upon which each description of promises has been held to be without the statute is substantially the same. For while the first clause expressly provides that it shall be applicable only to a promise by the executor or administrator to answer damages out of his own estate, the second manifestly has the same meaning with respect to a liability incurred by one person to answer for the debt, default, or miscarriage of another."

The authorities are numerous to the effect that a promise to answer for the debt of a third person out of such person's funds, in the promisor's hands, is not within the statute. We cite only the authoritative case of Estabrook v. Gebhart, 32 Ohio St. 415. The third paragraph of the syllabus, which gives the law of the case, is in these words:

"E. contracts with S. to build a house, and S. contracts with G. to furnish labor and materials. G. refuses to furnish such labor and materials except upon a promise, made to him by E., that he himself will pay the bill out of the funds coming to S. Held to be a contract not within the statute of frauds, so as to make a writing necessary."

The Supreme Court said:

"The first part of the charge relates to the nature of the alleged promise made by Estabrook. The court told the jury plainly that, if this promise was merely to answer for Showalter's debt, there could be no recovery for want of writing; but if there was a new contract between Gebhart and Estabrook, by which, to induce Gebhart to furnish the labor and material, Estabrook undertook to pay, out of the funds which would be coming to Showalter, that Gebhart furnished the * * * material relying on this promise, which he would not otherwise have done, and that Showalter was irresponsible and assented to this arrangement, then the contract might be enforced."

[3] But this does not exhaust all the possibilities of a promise to answer for the debt of another, not being within the thought of the statute, and hence not within it. We have already noted that the stat-

ute says nothing whatever as to the person to whom the promise is made. It is equally silent as to the person by whom it is made. Seemingly, therefore, a promise of the character called for, made by any person, is within the statute. But is this so? Our observation of the statute has brought to our attention that its phraseology is indefinite in three particulars, to wit, as to the person to whom it is made, as to the estate out of which the promisor is to answer for the debt, and as to the person by whom the promise is made. We have found that, though the statute is indefinite in phraseology in the first two particulars, it is definite in its thought as to each of them. In view of this, one would naturally expect it to be definite, also, in thought in the third particular, thus making it definite in thought all around. And the means of making it is at hand, just as it is at hand in the other two particulars. In the first particular, it consists in the radical difference between the creditor and any other person; and in the second, in such difference between the promisor's own estate and that of the debtor. So in the third particular it consists in the radical difference between a promisor who has no personal concern in the debt of the third person, and one who has such concern therein. Possibly, if one is duly sympathetic, he will sense that it is the thought of the statute that it is a promise made by a person who has no personal concern in the debt, and none other, which is covered by it, just as it was sensed that it was its thought that it was a promise made to the creditor, and none other, which is so covered. And it seems fitting that, if it is only a promise made to the creditor to answer for the debt out of the promisor's own estate that is within the thought of the statute, that it is only such a promise made by one who has no personal concern in the debt that is within its thought. Why should one who has no personal concern in the debt and one who has be placed on the same footing? The object in view in the enactment of the original statute of frauds is thus stated therein:

"For the prevention of many fraudulent practices which are commonly endeavored to be held by perjury and subornation of perjuries."

The interest prompting a Legislature to protect from perjury is not the same in the case of one who has a personal concern in the debt as in that of one who has no such concern therein. Where the promisor has a personal concern in the debt, the making of the promise is not dependent solely on the testimony of witnesses. The fact of having such concern is a corroborating circumstance in support of testimony tending to show the making of the promise. It renders its making more likely.

These circumstances tend to lead one to take the position, independent of authority, that it is only a promise made by one who has no personal concern in the debt that is within the thought of the statute and hence within the statute itself. When we come to tradition, we find numerous decisions, some of which are authoritative as to us, in which the promise involved has been held not to be covered by the statute, which can be, and which, in our judgment, should be, placed on this ground. The personal concern of the promisor in the debt may be either in its creation or in its payment. It is in its creation, if it is

made before or at the time of the creation of the debt. It is in its payment, if made after the creation thereof. The decisions which are authoritative as to us were in cases where the personal concern of the promisor was in the creation of the debt. They are Emerson v. Slater, 22 How. 28, 16 L. Ed. 360; Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826; Crawford v. Edison, 45 Ohio St. 239, 13 N. E. 80.

The first paragraph of the syllabus in Crawford v. Edison is in these words:

"When the leading object of the promisor is, not to answer for another, but to subserve some pecuniary or business purpose of his own, involving a benefit to himself, or damage to the contracting party, his promise is not within the statute of frauds, although it may be in form a promise to pay the debt of another, and its performance may incidentally have the effect of extinguishing that liability."

There Crawford, the promisor, contracted with Smith to build him a house. Smith subcontracted with Edison to do some work on the house. After Edison had done about two-thirds of his work, Smith abandoned the job and left the country, without having paid Edison anything. Edison claimed that he then refused to do any more work unless Crawford promised to pay him, and, upon Crawford's so promising him, he completed his work. It was held that, if such was the case, Edison was entitled to recover of Crawford the entire amount of his debt. At the time of the promise Crawford had a personal concern in Edison's finishing his work and the creation of the debt for that portion thereof. Otherwise the house would remain uncompleted. It is true that the evidence on behalf of Edison tended strongly to establish an absolute promise on Crawford's part, and it was left to the jury, as here, to determine whether the promise was absolute or conditional, they being told that if it was conditional there could be no recovery. This of itself was sufficient to sustain the judgment of the lower court on the verdict for plaintiff.

But the court did not base its affirmance on this ground, but on that set forth in the first syllabus. It is there said that, though in form a promise to pay the debt of another, yet if the leading object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, it is not within the statute. This statement of the law is taken substantially from the opinion of Mr. Justice Clifford in Emerson v. Slater. The promise sued on in that case was made to one who had contracted with a railroad company to build its railroad by one interested in the company as stockholder and creditor, and was to pay promisee a certain sum if he would finish the railroad by a certain day. The promise was treated as one to answer for the debt of the company to the extent of the sum. The personal concern of the promisor was in the creation of the debt. Its creation would result from the finishing of the railroad. Thereby the railroad would be put in condition for operation, and by its operation the promisor would obtain payment of his debt and dividends on his stock. It was held that the promise was not within the statute. Mr. Justice Clifford thus stated the ground of the decision:

"Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time, and becomes essential ground of the credit given to the principal debtor, are, in general, within the statute of frauds. Other cases arise which also fall within the statute, where the collateral agreement is subsequent to the execution of the debt, and was not the inducement to it, on the ground that the subsisting liability was the foundation of the promise on the part of the defendant, without any other direct and separate consideration moving between the parties. But whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

The case of Davis v. Patrick is substantially the same as that of Emerson v. Slater. The promise sued on there was made to one who had contracted with a mining company for the transportation of ore by one interested in the company as creditor, and was to see the promisee paid. Though the promisor was to see him paid for transportation of ore under his contract, both theretofore and thereafter, the suit was only for subsequent transportation; the previous transportation having been paid for by the company. Mr. Justice Brewer said:

"Whenever the alleged promisor is an absolute stranger to the transaction, and without interest in it, courts strictly uphold the obligations of this statute. But cases sometimes arise in which, though a third party is the original obligor, the primary debtor, the promisor has a personal, immediate, and pecuniary interest in the transaction, and is therefore himself a party to be benefited by the performance of the promisee. In such cases the reason which underlies and which prompted this statutory provision fails, and the courts will give effect to the promise."

And, again:

"The thought is that there is a marked difference between a promise which, without any interest in the subject-matter of the promise in the promisor, is purely collateral to the obligation of a third party, and that which, though operating upon the debt of a third party, is also and mainly for the benefit of the promisor. The case before us is in the latter category. While the original promisor was the mining company, and the undertaking was for its benefit, yet the performance of the contract inured equally to the benefit of Davis and the mining company. Performance helped the mining company in the payment of its debt to Davis, and at the same time helped Davis to secure the payment of the mining company's debt to him."

We know no authoritative case where the promise was made after the creation of the debt and the personal concern of the promisor was in its payment. But numerous cases of this character can be cited, the decision in which that the promise was not within the statute can and should be placed on the ground that, as the promisor had personal concern in the payment of the debt the promise was not within the thought of the statute. We cite but two, to wit, the early case of Williams v. Leper, 3 Burrow, 1886, and that of Landis v. Royer, 59 Pa. 95.

The promise sued on in Williams v. Leper was made to a landlord, who was about to distrain the goods of the tenant for arrears of rent, by one to whom the tenant had conveyed his goods for the benefit of his creditors. That sued on in Landis v. Royer was made to a mate-

rialman, who supplied lumber to a contractor in erecting a house for the promisor, and who had a right to take out a mechanic's lien on the building. Judge Sharswood said:

"It was the debt of the defendant's own building, the payment of which could legally be enforced against it; though it may not have been personally his debt, his property was answerable for it, and his engagement to pay was in relief of his property."

Judge Campbell, in the course of his opinion in Corkins v. Collins, 16 Mich. 478, thus put the matter:

"When, by the release of the property from a lien, the party promising to pay the debt is enabled to apply it to his own benefit, so that the release inures to his own advantage, it is quite easy to see that a promise to pay the debt in order to obtain the release may be properly regarded as made on his own behalf, and not on behalf of the original debtor, and any possible advantage to the latter is merely incidental, and is not the thing bargained for. That promise is therefore in no proper sense a promise to answer for anything but the promisor's own responsibility, and need not be in writing."

In cases of this kind the promisor is personally concerned in the payment of the debt, for thereby his property is relieved of it. Possibly there is stronger reason for saying that the promise in cases of this kind is not within the statute than that in cases of the other kind. The ground upon which this may be so is this: According to the phraseology of the statute, the only promise which is within it is one to answer for the debt of another person. This means that the debt shall be solely and exclusively the debt of the third person, and not that of the promisor. Where the creditor has a lien, or the right to take out a lien, on the property of the promisor to secure the debt, it may be said that in a sense it is not solely and exclusively the debt of the third person, but is also the debt of the promisor. This is so, in that the property of the promisor is obligated to the payment of the debt. If this reasoning is sound, then it can be said that the ground upon which such a promise is not within the statute is that it is not covered by its phraseology.

This, however, cannot be said of the promise in cases of the other kind. But in reality, notwithstanding the creditor has such lien, or the right to take it out, the debt is solely and exclusively the debt of the third person. In no real sense is it the debt of the promisor. The ground, therefore, upon which to place it that the promise is not within the statute, is that which we have set forth. The statute, according to its thought, covers only a promise to answer for the debt of a third person by one who has no personal concern in the debt. It does not cover a promise by one who has a personal concern therein; and in such a case the promisor has such concern. His property is obligated for it, and by its payment will be relieved of the obligation. If, then, such is the true ground thereof, it follows that in any case where the promisor has a personal concern in the debt, whatever may be the basis thereof, the promise is not within the thought of the statute, and hence not within the statute. The decisions in cases of this kind, therefore, that the promise is not within the statute, indirectly uphold the position that the promise in cases of the other kind are not within it.

We have stated that these decisions can and should be placed on the ground that the statute only covers a promise made by a person who had no personal concern in the creation or payment of the debt, as the case may be, the promises involved therein not being so made, but by one who had such concern, not that they were actually placed on this ground.

Indeed, it cannot be said that the courts who rendered them were clearly conscious that the decisions could be justified on the reasoning which we have put forth. From the quotations made it will be seen that the ground expressed is that the leading object of the promisors is to subserve some pecuniary or business purpose of the promisor. Sometimes the ground is stated to be that a new consideration or benefit has moved to the promisor; and the fact of personal concern has a tendency to support the contention that the promise was absolute, and not a conditional one, and hence not within the statute on this ground. The decisions themselves have been much criticized, though it is recognized that what they stand for is established law. It has been urged that such promises come within the terms or language of the statute, that to exclude them is judicial legislation and that the rule which they establish is anomalous. It has been suggested that, if the promisor is to be liable at all, it should not be on the promise, but in quasi contract for the benefit received.

The decisions have also been a source of error in the reasoning on which they have been based, in that it has sometimes been thought that they were authority for the position that, in every case where a consideration moves to the promisor, the promise is within the statute, which is not the case. We would submit that the position that it is the thought of the statute that only a promise by a person who has no personal concern in the creation or payment of the debt to which it relates is within it is reasonable. It cannot be said that a promise by a person who has such concern therein is within the terms or language of the statute. The statute is silent as to the person by whom the promise is made. It is no more within the terms or language thereof than a promise to answer otherwise than out of the promisor's own estate, or than a promise to answer to the debtor or one other than the creditor. The position, therefore, reads no exception into the statute. It is simply one of three limitations on its scope, which one is constrained to put when one passes through its unlimited phraseology to its thought and looks at that phraseology from the other side. And there is nothing in this position that is calculated to lead one into error. Of course, some limitation must be put upon the words "personal concern." The concern must be such as that which existed in the cases cited and others like unto them; i. e., immediate and pecuniary.

If, then, the views here advanced are sound, a full expression of the thought of the statute as to the character of the promise covered by it would be somewhat like this: It is a promise to answer for the debt of another (i. e., to pay if he does not), made to the creditor by one who has no personal concern in the debt, the answering therefor to be out of his own estate.

Wald's Pollock on Contracts (3d Ed. by Williston) p. 169, characterizes the contract to which the statute relates as "a contract of suretyship or guaranty." Ames, in his Lectures on Legal History, p. 95, characterizes it as "guaranty." And such is what we take to be the ordinary conception of a contract of suretyship or guaranty. In order, then, to bring a promise within the statute, it is not sufficient that it is a promise to answer for the debt of another; i. e., to pay his debt if he does not. The promise must also be to the creditor by one who has no personal concern in the debt, and to pay same out of his own estate. Though it may be a conditional promise, if it is not to the creditor, or not by one who has no personal concern in the debt, or is not to pay it out of the promisor's own estate, it is just as much not within the statute as it would have been, had it been, not a conditional, but an absolute, promise.

[4] We come now to apply the legal positions thus advanced to the case in hand. The defendant had a personal concern in the creation of so much of the debt as was created after the making of the promise, and in so much thereof as had been theretofore created. It had such concern in the creation of the former portion, for it would result from plaintiffs' continuing to deliver lumber, and thereby the completion of the work which the Heffron Company had contracted to do would be furthered. It had such concern in the payment of the latter portion, for thereby its property would be relieved of the lien which plaintiff had a right to take out. Such being the case, the defendant's promise, whatever may have been its character, was not within the statute.

But this is not the only ground upon which it can be said that the promise was not within the statute. To say the least, it was open for the jury to find that the promise was to answer for the debt, not out of its own estate, but out of the Heffron Company's funds. There yet remained to be paid it under the contract over $6,000, of which over $2,000 had been already earned. By the company's contract with defendant it had the right to apply subsequent payments to this indebtedness, and under the contract, and the bond given simultaneously therewith, defendant had recourse against it and the surety company for any deficiency. It must be held, therefore, that this ground of the motion for a peremptory instruction is not well taken.

[5] The other ground is that the officer of defendant who made the promise was without authority to make it. The title of the officer who made the promise on behalf of defendant was comptroller. His duties had to do with the auditing and treasury departments of defendant. He was the supervisor of both departments. The one settled accounts against defendant, and the other paid them. It was a part of his duty to raise money to enable defendant to pay its accounts, and to collect accounts due it. At times he acted as vice president, and at others as treasurer. The question whether it was within the scope of his employment was submitted to the jury. We think it clear that it cannot be said, as a matter of law, that he was without authority. The promise had relation to the payment both of defendant's indebtedness to the Heffron Company and of its indebtedness to plaintiffs, for the latter of which a lien might be taken.

We have considered the other assignments of error carefully, and find them not well taken. There has been no such presentation of them as calls for a further response thereto.

Finding none of the assignments well taken, the judgment of the lower court is affirmed.