LEMUEL C. PRATT v. JOHN H. BATES AND WILLIAM L. HUNTER, SURVIVORS OF THEMSELVES AND CHARLES H. BATES, DECEASED.

*Statute of Frauds—Verbal promise to pay the debt of another— Damages for failing to pay another's debt.*

A verbal promise to pay the debt of another is within the statute of frauds and void if made to the creditor; but not if made to the debtor.

A man promised certain stockholders to pay the debts of the corporation, in consideration of which they transferred some of their stock to him. They were not liable themselves and were interested only as stockholders. Failing to pay a certain debt he was sued in assumpsit by the creditor upon an assignment of this agreement. *Held* that the action did not lie, since nothing was assigned but the damages resulting to the stockholders from the non-payment of that one debt, and their interest could not be ascertained in a court of common law, nor severed from the entire transaction.

The measure of damages for failure to pay the joint obligations of others, is the whole amount of the debts.

Error to Kalamazoo. Submitted November 21, 1878. Decided January 8, 1879.

ASSUMPSIT. The facts are in the opinion.

*Edwards & Sherwood* for plaintiff in error. An unwrit-

ten promise to pay the debt of another is void, *Maule v. Bucknell*, 50 Penn. St., 39. While a debt stands against the original debtor, the promise of a third person to pay it is collateral and must be in writing (*Watson v. Randall*, 20 Wend., 201; *Nelson v. Boynton*, 3 Met., 396) unless there is a consideration directly to the promissor from the promissee, *Calkins v. Chandler*, 36 Mich., 320; *Farley v. Cleveland*, 4 Cow., 432; *Leonard v. Vredenburgh*, 8 Johns., 29; *Mallory v. Gillett*, 21 N. Y., 412.

*Severens, Boudeman & Turner* for defendants in error. A parol promise to pay another's debt is not within the statute of frauds if made upon a consideration beneficial to the promissor, *Jepherson v. Hunt*, 2 Allen, 417; *Alger v. Scoville*, 1 Gray, 391; *Emerson v. Slater*, 22 How., 28; *Allen v. Thompson*, 10 N. H., 32; *Luark v. Malone*, 34 Ind., 444. An action lies upon the breach of a promise to pay a debt in the payment of which the promissor is interested and the measure of damages is the amount of the debt, even though the promissee has not paid it (*Furnas v. Durgin*, 119 Mass., 500; *Wheelock v. Rice*, 1 Doug. [Mich.], 267; *Hall v. Nash*, 10 Mich., 303; *Dye v. Mann*, 10 Mich., 291; *Richards v. Whittle*, 16 N. H., 259; *Stewart v. Clark*, 11 Metc., 384; *Gilbert v. Wiman*, 1 Comst., 550; *Wright v. Whiting*, 40 Barb., 235; *Loosemore v. Radford*, 9 M. & W., 657; *Rector v. Higgins*, 48 N. Y., 532; *Farnsworth v. Clark*, 44 Barb., 603), and ownership of stock or of a beneficial interest in the property of a debtor corporation is a sufficient interest to make an oral promise to pay its debts binding, *Lethbridge v. Mytton*, 2 B. & Ad., 772.

CAMPBELL, C. J. Defendants in error sued Pratt to recover a debt due from the Michigan Chair Company, which it was claimed he had become liable to pay them. The transaction set out in the declaration was that on the 1st of September, 1875, Lucius B. Kendall, Henry E. Hoyt and Albert Arms were stockholders of the company,

which was then indebted to Bates & Co., and Pratt, in consideration that these gentlemen would transfer to him 360 shares of stock, agreed he would pay that debt, and they made the transfer. That afterwards, in consideration that Bates & Co. would take no legal steps against the chair company for three months, Pratt promised that firm to pay the debt.

This claim was set up in certain counts of the declaration with some variations. There was also a count relying on the promise to Kendall, Hoyt and Arms alone, and a further count relying on that promise and its assignment to Bates & Co.

It is not seriously contended that Bates & Co. could sue on the promise to Kendall, Hoyt and Arms without some further facts to bring them into privity with Pratt.

The liability supposed to arise from the extension of time is in our opinion very plainly within the statute of frauds. It was a promise to Bates & Co., creditors of the chair company, to pay the chair company's debt if they would not sue the chair company within three months. There is nothing in either allegation or proof to indicate any agreement to substitute Pratt's liability for that of the company. It was an additional and collateral liability to that of the principal debtor. The extension of time might be a very good and sufficient consideration for Pratt's promise, but the promise itself being to pay the debt of another is void unless in writing. And the possible interest of Pratt in seeing the debt paid, or the advantage he might possibly gain by the delay did not make the debt any less the debt of the chair company, nor his promise any other than a promise to pay it as their debt. The statute is clear on this subject. *Brown v. Hazen*, 11 Mich., 219; *Corkins v. Collins*, 16 Mich., 478; *Welch v. Marvin*, 36 Mich., 59; *Green v. Brookins*, 23 Mich., 48.

The promise to Kendall Hoyt and Arms, if proved as alleged, being directly to them and not to the creditors

of the chair company, for a consideration moving from the promissee to the promissor, was not within the statute. *Green v. Brookins,* 23 Mich. R., 48.

The questions arising on this are therefore quite different, and require different treatment. The court below allowed damages to the full amount of the debt, without any reference to the interest of the original promissees in the matter, and without being measured by their individual or collective loss by the non-payment of the company debts.

It is evident that Bates & Co. if claiming as assignees of the promissees (and this is the only ground on which they can make any claim) can only recover the same amount and on the same conditions with them.

There is a misrecital of the consideration. The number of shares to be transferred, instead of 360, was 1440.

To understand the position of the parties, it is necessary to refer briefly to what appeared on the trial. Pratt and Kendall, Hoyt and Arms were holders individually of a large part of the stock of the chair company. Its affairs were not prosperous, and it had become indebted largely to Pratt and others to the amount of more than $60,000. Pratt's claim was nearly half of that sum. Negotiations were had to induce him to assume charge of the affairs of the company and endeavor to work out; and the conversation in which the alleged promise is claimed to have been made was during these negotiations, and seems to have been but a part of those transactions. Whether separate or connected, the purpose was the same. To advance their interests or supposed interests in some way, it is claimed the stock was transferred and the promise given to pay the corporate debts.

It appears that the stock was not held jointly but severally, and was but a part of what was held by the three promissees. It appears, also, that the only pur-

pose, of any of them was to protect their interests as stockholders. There is some evidence that they supposed they were individually liable to some extent, but this was not the fact.

Assuming, which it appears to us is extremely doubtful, that this transaction if established in fact was separable from its antecedents and entirely distinct, it appears that before the assignment to Bates & Co. of whatever claim Kendall and the others had to have the Bates & Co. debt paid by Pratt, there had been other dealings between Pratt and the stockholders both individually and collectively which materially altered the position of those promissees and their rights in the concern. They had no interest at all in the payment of the company debts except as it might enhance their rights and interests as stockholders. Those rights and interests could only be measured in the light of what has been done with their consent and coöperation since. The agreement claimed was not to pay Bates & Co., but to pay all the debts. And if such was the agreement, we do not see how the precise damage could be ascertained arising from the non-payment of one debt, or how it could be assigned as a separate claim.

The assignment to Bates & Co. conveys no interest in the stock of the assignors, and nothing but their damages arising out of the non-payment of that one debt.

It is claimed, however, that the effect of the agreement was to give to those three promissees an absolute right of action to recover the whole debt.

If they were the original debtors whose joint obligation Pratt had agreed to pay, the authorities undoubtedly hold that the amount of the debt would be the proper measure of damages, because it was the sum they would themselves have to pay their creditors who could look to no one else. There are some cases of questionable authority which intimate that in the absence of proof on the subject it is presumable that a person who gives a valuable consideration to another to pay the debt of a

third is liable in some way upon it. This was held on a question of pleading in *Thomas v. Allen*, 1 Hill, 145. But where, as here, it affirmatively appears that the promissees were not liable, and had no personal debit relations with the creditors of the company, we think justice and good sense require that if they recover at all, they can only recover what they have lost by the default. This is the general rule of damages to which the cases giving a debtor damages to the amount of his debt against one who agrees to pay it are exceptions resting on special reasons, and anomalous. It has always been regarded as introducing into the common law a partial equitable jurisdiction for specific performance. The reason for it does not extend to such a case as the present where if the promissees received the money the creditors could have no legal remedy against them, as they would against a debtor.

We think, therefore, that the interest of Kendall and his associates was confined to such injuries as might come to them as stockholders, and that it cannot be effectually ascertained in a court of common law or severed from the entire transaction; and that upon the facts shown by plaintiffs below in evidence they made out no cause of action.

The other points are not therefore important. Judgment must be reversed with costs, and a new trial granted.

The other Justices concurred.