HARRAL et al. v. BRIDGES.

(Court of Civil Appeals of Texas. Amarillo. Jan. 10, 1914.)

1. BROKERS (§ 103*) — CONTRACT — RATIFICATION.

W., having certain real property for sale belonging to defendant H. of which plaintiff was in possession as tenant, and having completed a sale, in order to secure possession from plaintiff, agreed to procure from defendant H. $150 to be paid to plaintiff, and H., on being informed of the arrangement, stated to plaintiff that, if W. did not pay the amount, he would. *Held*, that such facts showed a knowledge on the part of H. of W.'s acts and constituted a ratification thereof.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 147; Dec. Dig. § 103.*]

2. FRAUDS, STATUTE OF (§ 33*)—CONTRACT—DEBT OF ANOTHER.

A broker to sell certain land for H. having promised plaintiff who was in possession to obtain $150 from H. to be paid to plaintiff in consideration of his releasing possession, the promise of H. to pay such amount was not within the statute of frauds as a promise to answer for the debt of another.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

3. BROKERS (§ 92*)—CONTRACTS—INDIVIDUAL LIABILITY.

A broker having sold certain land for his client which was in plaintiff's possession, and having agreed to obtain $150 for plaintiff from his client as consideration for plaintiff's release of possession, the broker acted in a representative capacity only and was not individually liable to plaintiff for such sum.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 135; Dec. Dig. § 92.*]

Appeal from Hale County Court; W. B. Lewis, Judge.

Action by F. M. Bridges against J. O. Harral and another. Judgment for plaintiff, and defendants appeal. Affirmed as to defendant Harral and reversed as to defendant McWhorter.

Fred C. Pearce and Dalton & Russell, all of Plainview, for appellants. Y. W. Holmes, of Plainview, for appellee.

HENDRICKS, J. In February, 1912, Harral, one of the appellants in this court, was the owner of a farm in Hale county, Tex., and F. M. Bridges, the appellee herein, was his tenant, cultivating the place on shares,

for said year, and on the 27th of February of that year, the appellant Harral sold the farm through the agency of one Soash, assisted by McWhorter, the latter a codefendant in the trial court, and the other appellant in this court. The appellee, Bridges, sued the defendants, Harral and McWhorter, on the theory that McWhorter contracted with him (Bridges) for himself personally, and also for J. O. Harral, to pay the sum of $150 in consideration of the delivery of the possession of said farm in order to effectuate the sale of same.

[1] The testimony is conflicting, McWhorter denying that he was Harral's agent, or that he represented himself as one, or that he promised to pay appellee any sum to vacate the property; the defendant Harral also denying that McWhorter was his agent for any purpose, or that he ratified the promise of McWhorter, if any was made, to pay the sum of $150 for the possession of the property, and asserts that Bridges was a tenant at will until the property was sold. With reference to the liability of Harral, the principal contention is that if any promise was made it was one to pay the debt of another within the statute of frauds, and, although not pleaded, that the objections to the evidence sufficiently raised the question, and it is assigned and principally briefed on that theory.

Bridges testified that, at the time the place was exhibited to the purchaser for the purpose of sale, McWhorter informed him that he thought he could sell the place, and wanted him (Bridges) to give possession. "I told him I had the place and did not have to move. He asked me what I would move for, and I said, '$150.' McWhorter said, 'You will move for $150, will you?' McWhorter said he would be back next Thursday and would see Harral and get the money." Bridges also testified that Harral accompanied Soash and McWhorter on this occasion with the purchaser, and at this time Harral stated to him: "I could afford to sell it and pay you something to move." Bridges further testifies that the next day, accompanied by his wife, he went to town to see Harral for the purpose of settling the matter, and, after finding Harral, his version of the transaction at this time is as follows: "I told him that we met those people [meaning the purchasers] going down there—about six wagons loaded with household goods—and we stopped them and asked where they were going, and they said, 'Down to the Harral place.' I told him they were moving in on me, and McWhorter said he would pay us $150 to move, and Jim [meaning Harral] said he didn't know anything about it. I said, 'Well, I have the place rented and don't aim to move until I get my money.'" He further testified on cross-examination: "I told Mr. Harral that Mr. McWhorter said he would pay me $150 and also said he would see Jim and get it. Harral told me he thought I ought to have it, and, if McWhorter didn't pay it, he would." We think that this testimony clearly raises an attempted agency upon the part of McWhorter for Harral to obtain from him (Harral) the sum of $150 for payment to Bridges, for the purpose of obtaining immediate possession of the premises.

If Bridges' testimony is true, and we are required to view it in that manner, Harral knew of McWhorter's proposition and it constitutes a ratification of his acts. Reviewing the transaction in accordance with the testimony of Bridges, it presents rather a peculiar status, for the reason that Harral promises to comply with the proposition made by McWhorter to Bridges for the possession of the property; the money to be obtained by McWhorter from Harral. From what investigation we have made, we are unable to find a case, and we are inclined to think it is undiscoverable in the books, where A. promises B. that, if C. does not comply with his promise to get the money from him (A.) to pay B. the amount promised, he (A.) will pay it. This case presents this very theory, and we are not prepared to say that it is so highly improbable as that we should reverse and render the cause upon the facts. It is sometimes the case that a man may become liable upon a state of facts, and the agreement different than expected, and the legal consequences are imperative, for the reason the full significance of the facts was not properly grasped or impressed upon the mind in making the arrangement. The trial court clearly and succinctly presented the proposition of McWhorter's agency, the ratification of same by Harral, and the liability of Harral predicated on the theory above. As stated, Harral denies that he made any promise whatever, as likewise does McWhorter. If Harral promised that he would see that McWhorter got the money from him (Harral) to pay Bridges the sum of $150 for the immediate possession of the property, and upon the consideration of this promise Bridges relinquished the possession of the land and the tenancy of same for the year, and, though he was promising that McWhorter would obtain the money for himself, the main purpose of such a promise, if made, was to subserve his own interests, and while to some extent the miscarriage of another's promise is involved, the status broadens into one of agency.

[2] Upon analysis, if A. promises to pay a sum of money which B. has promised to obtain from him (A.), where B. is purporting to act for A. and for his benefit, and A.'s promise is made upon a new consideration, he makes the promise his own, and adopts the agency of B. The statute of frauds has no application to a case of that character, and, while the court presented the statute as a defense, we are inclined to believe that the cause was one of agency with ratification, or nonagency, and the jury having solv-

ed it upon a proper presentation of that phase of the case, the judgment in favor of Bridges against Harral is affirmed.

[3] The trial court submitted the following charge: "If you find and believe from the evidence that the defendant, R. A. McWhorter did, on or about the 27th day of February, 1912, promise to pay F. M. Bridges, the sum of $150 to relinquish possession of said place, and that, relying upon said promise, the plaintiff did relinquish possession of said place, then I charge you to find for the plaintiff against the said R. A. McWhorter in said sum." We believe Bridges' testimony as to the agreement he had with McWhorter will control the liability of that defendant. We think, upon a study of the record, that a reasonable construction of Bridges' testimony does not indicate that McWhorter personally agreed to pay the sum of $150, but the arrangement was upon the basis that McWhorter was to get the money from Harral. Bridges says: "I did not take Mr. McWhorter's word. I wanted to be sure I was to get the money. * * * The reason I went to see Mr. Harral was that I was on his place and I thought he was the man to see for the money." Bridges never moved from the premises until he obtained the promise from Harral, as indicated above. Neither is there any theory of misrepresentation of agency in this record to support a basis of recovery against McWhorter. It is true Mrs. Bridges' testimony is susceptible of the construction that McWhorter told her that he had told her husband that he would pay the $150, but Bridges' testimony of the real arrangement upon which he must predicate recovery does not sustain a personal liability against McWhorter. He only purported to act for, and obtain the money from, Harral. Bridges regarded it that way. Bridges' testimony is a judicial admission of the real arrangement which must control. In this respect, we think the court erred in submitting the liability of McWhorter, and the judgment is reversed and rendered as to McWhorter and, as stated, affirmed as to Harral.