**BARBOUR et al. v. THOMAS.**

**DEMING et al. v. SCHRAM.**
Nos. 6035, 6036.

District Court, E. D. Michigan, S. D.
April 6, 1933.

272

Angell, Turner, Dyer & Meek, Beaumont, Smith & Harris, Warren, Hill, Hamblen, Essery .& Lewis, Clark, Klein, Ferris & Cook, Goodenough, Voorhies, Long & Ryan, and James O. Murfin, all of Detroit, Mich., for plaintiffs.

John T. Nichols, in pro per., Lewis & Watkins, Henry L. Lyster, Dykema, Jones & Whe at, Race, Haass & Allen, Slyfield, Hartman, Mercer & Reitz,. Frederic T. Harward, M. Hubert O'Brien, Lightner, Hanley, Crawford, Sweeney & Dodd, Hedley V. Richardson, Walter E. Oxtoby, Miller, Canfield, Paddock & Stone, Walters, Carmichael .& Head, and Shapero & Shapero, all of Detroit, Mich., Patrick H. O'Brien, Atty. Gen. of Michigan, Bisbee, McKone, Wilson, King & Kendall, of Jackson, Mich., and William Alfred Luck-

ing, Charles B. Warren, and Frank E. Robson, all of Detroit, Mich., and Charles Cummings, of Lansing, Mich., for intervenors.

Robert S. Marx, Frank E. Wood, Lawrence Levi, Carl Runge, and William Kelly, all of Cincinnati, Ohio, for defendants Schram and Thomas.

William Henry Gallagher and A. W. Sempliner, both of Detroit, Mich., for Connolly, receiver for Detroit Bankers' Co.

A. W. Sempliner, of Detroit, Mich., for Groesbeck, receiver for Guardian Group.

HAYES, District Judge.

The Detroit Bankers' Company, hereafter referred to as the holding company, is a corporation for pecuniary profit, chartered under the general laws of the state of Michigan. It was not chartered as a banking institution. It was the registered owner of all of the capital stock of the First National Bank-Detroit, hereafter called the bank, except the qualifying shares of directors, when the bank was placed in the custody of a conservator, and later when a receiver was appointed. The Comptroller has decided the necessity for, and levied, a stock assessment of 100 per cent. on all the outstanding stock. The question involved is this: Can the receiver of the bank enforce the assessment against the shareholders of Detroit Bankers' Company, or is he confined to the single remedy of proceeding against the corporation?

The case presents a factual situation quite different from any case hitherto reported.

The holding company came into existence through the combined efforts of the officers and directors of the First National Bank of Detroit and four state banks, all of Detroit. An appraisal of the value of the stock in each of the five banks was made, and an agreement reached on the basis for the exchange of the holding company stock for the stock in each of the five banks. The capital stock of the five banks amounted to several million dollars. The holding company was to issue 120 shares of no par value at $10 per share, and $50,000,000 of par value stock. The no par stock was subscribed for by the twelve executive officers of the five banks, apportioned among the five banks, and these were to have exclusive voting power for five years. No one could be a director unless he owned 10 shares of trustee stock, and no one could vote except a trustee stockholder. Thus the destiny of these five banks was committed for five years to these twelve trustees, with an apparent investment of $1200. The invest-

ment was apparent and not real, for the banks put up the money to pay for the stock and charged it to expense.

The Banking Commissioner, the Attorney General, the Secretary of State, and the Securities Commission of Michigan, before chartering the holding company or permitting it to sell or exchange its stock and do business in the state of Michigan, required the insertion of this clause in the articles of association:

"Article IX. The holders of stock of this corporation shall be individually and severally liable (in proportion to the number of shares of its stock held by them respectively) for any statutory liability imposed upon this corporation by reason of its ownership of shares of the capital stock of any bank or trust company, and the stockholders of this corporation, by the acceptance of their certificates of stock of this corporation, severally agree that such liability may be enforced in the same manner as statutory liability may now or hereafter be enforceable against stockholders of banks or trust companies under the laws of the United States or the State of Michigan."

They further required that the clause be printed on each certificate of stock issued by the holding company.

The plan was submitted to, and approved by, all the stockholders in the five banks, and over 97 per cent. of all the capital stock of each bank was exchanged for the holding company stock. The holding company had no capital, and the banks advanced the expenses of incorporation; the expense being apportioned among the banks. The operating expenses of the holding company were met by assessing it on a proportionate basis among the banks. When dividends were declared by the directors of the holding company, they would "suggest" the amount of dividend to be declared by each bank, and the directors of each bank complied without any material change or alteration. The dividends received were set apart in a separate account and distributed entirely among the stockholders of the holding company. The expense for postage and clerical work was not deducted. With the exception of the year 1932, the holding company was a mere agency to receive and disburse, without charge, the dividends to the stockholders.

The holding company would issue to a prospective director the minimum number of shares of stock to qualify him as a director in one of the banks, but he was required to execute simultaneously an irrevocable assign-

ment of the certificate and the dividends to the bank. The certificate and assignment were placed with a depository under an agreement to deliver the same to the holding company when he ceased to be a director. In many instances the director never saw or had actual or constructive possession of the certificate.

The holding company directors selected and elected the directors of their choice in the bank, and in this manner controlled the several banks.

When a stockholder in the First National Bank surrendered his certificate in exchange for a certificate in the holding company, his interest in the national bank was reduced, and he acquired a proportionate interest in the other four banks.

There are some additional complications. Each of the five banks had some branch banks, and some of them owned all the capital stock in the other banks. After the holding company acquired the stock of the five banks, it acquired the controlling stock—in some instances, all the stock—in many state and national banks in the different cities of Michigan. But authority for the exchange of stock was granted by the Securities Commission in the same manner as the original exchange. When, for example, the holding company acquired all the stock in a national bank in Lansing, application would be submitted to the Securities Commission, stating the basis upon which the bank stock would be transferred in exchange for holding company stock, and permission was given, at all times, because the Banking Commissioner and the Attorney General approved the plan on the assumption that all the shareholders of the holding company assumed their ratable portion of any bank stock assessment which might be levied on stock standing in the name of the holding company.

When Detroit Bankers' Company was dissolved and a receiver appointed, 1,775,000 shares of its stock were outstanding, and each certificate contained clause IX. Its assets consisted of stock in national and state banks, or property incidental thereto. When the Detroit banks, state and national, failed, practically all the banks of which Detroit Bankers' Company was principal stockholder failed, and the holding company is hopelessly insolvent.

We are here concerned with the stockholders of the First National Bank-Detroit. Its capital stock amounted to $25,000,000, and all of the stock, except qualifying shares of its directors, was registered in the name of the holding company.

The Comptroller of the Currency appointed a receiver and determined the necessity for a stock assessment of 100 per cent. and levied the same against the owners of all outstanding stock. The receiver was proceeding to enforce the same against the shareholders of the holding company on the theory that they were the true and beneficial owners of the bank stock. The complainants, as shareholders in the holding company, in their own behalf and in the behalf of all shareholders as a class, brought this suit in equity to restrain the receiver of the bank and the receiver of the holding company, alleging, among other things, that (1) article IX in the charter was contrary to the general law of Michigan and void; that (2) the provision undertaking to require a shareholder to assume the stock assessment liability was a promise to assume the debt of another, and not signed by the shareholder or any one by him authorized, and was not valid under the statute of frauds; that (3) if the provision in the charter was valid and the statute of frauds inapplicable, the promise, if any, was contractual and unenforceable for that the liability arose from conditions not within control of the corporation and not in the contemplation of the parties, the liability arising from insolvency which was brought about by (a) the illegal acts of the Governor of Michigan in declaring state banking holidays, (b) the illegal acts of the President of the United States in declaring national banking holidays, and by (c) the illegal acts of the conservator who sold the liquid assets of the bank.

The bank receiver denied the allegations, moved to dismiss the bill, and filed a cross-bill alleging that the shareholders of the holding company were the real and true beneficial owners of the stock in the bank, that the holding company was a mere dummy or sham, that they had assumed the payment of the assessment as such stockholders, and held themselves out as such stockholders and as assuming the stock assessment, upon all of which the officers of the state of Michigan and of the United States and the creditors of the bank relied, and that they are now estopped to deny their liability. The receiver moved to strike the portions of the bill from 6 to 14, covering the matter stated above under (a), (b), and (c) of this opinion, and prayed for a money judgment against each complainant for his proportionate part of the entire assessment.

Leave was granted by the circuit court for the county of Wayne, in chancery, for the complainants to make the state receiver a party defendant; the relief sought being a permanent injunction against the receiver of the holding company and the receiver of the bank from collecting, or attempting to collect, in any suit in equity or action at law, from the complainants, or any stockholder in the holding company, the liability mentioned in article IX of the association, or any other sum based on the theory of any stockholder's liability to the national bank. The state receiver answered the bill and cross-bill, pleading to the merits, and asserted his right to collect the stockholders' liability, if any, under the orders of the state court.

After these pleadings had been filed and the case was actually ready to go to trial, the receiver filed an order from the state court limiting his right to appear, undertaking to confine it to the complainants before the court.

■ The receiver, having appeared by leave of the court appointing him and pleaded to the merits of the original bill and cross-bill, submitted to the jurisdiction of this court as to all issues properly arising on the pleadings. The pleadings raised every issue in regard to the liability for the national bank stock assessment, the right of its receiver to collect the same from the shareholders of the holding company, and the determination of the rights of the state receiver therein. The state receiver asserted his right to collect the liability, if one existed, of the stockholders of the holding company. Having become such a party, he submitted to the jurisdiction of the court and is bound by its decree. Merchants' Heat & Light Co. v. J. B. Clow & Sons, 204 U. S. 286, 27 S. Ct. 285, 286, 51 L. Ed. 488.

In this case the defendant had not submitted to the jurisdiction and was not properly before the court, but he filed an answer and set up a cross-claim. Justice Holmes said: "This single fact shows that the defendant, if he elects to sue upon his claim in the action against him, assumes the position of an actor and must take the consequences."

Also compare Massachusetts Bonding & Insurance Company v. Concrete Steel Bridge Company, 37 F.(2d) 695 (C. C. A. 4), and American Mills Company v. American Surety Company, 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306.

■ When the appearance has become general, the court acquiring jurisdiction of the person and subject-matter retains it, unless, in the exercise of a proper discretion, it permits the appearance to be withdrawn. 4 Corpus Juris, 1371. The facts here do not warrant the exercise of such discretion, and the appearance, therefore, is general, and the receiver must abide the consequences of the decree.

Certain interveners in this suit who are represented by Mr. Lucking moved to dismiss the cross-bill and to enjoin the bank receiver on the basis of the allegation in the pleadings. He stated that he applied to the state court for, and obtained, the order from it undertaking to limit the purpose of the state receiver's appearance. And the same questions determined in this suit are now being raised in the state court, in a suit to which the national bank receiver is not a party. It is perfectly apparent that it is undesirable, on the part of a minority of stockholders, for the courts of the United States to exercise jurisdiction, or else an indirect effort is made to get the same questions litigated in both tribunals.

■ The sole basis of recovery by the state receiver is article IX of the charter. This provision does not constitute an asset of the holding company for the benefit of its general creditors. It is a contingent liability which may or may not mature into a liability of the shareholders. If and when it does mature, it is for a limited and specific purpose, the satisfaction of the bank stock assessment. It is analogous to a stockholder's statutory liability, which is ordinarily regarded as a primary liability. Myers v. Knickerbocker Trust Company (C. C. A.) 139 F. 111, 1 L. R. A. (N. S.) 1171, 14 C. J. 978.

Article IX, when given the construction which its language plainly imports, imposes all bank stock liability on the holding company's shareholders, being the owner of the legal title, it would be, in the absence of the provision, liable for the assessment. This the stockholders assume. They not only assume it, but agree that it may be enforced against them in the same manner and to the same extent as against stockholders in state or national banks.

If there is a liability by such shareholders, it is undoubtedly a primary one for the creditors of a bank who require the assessment to pay the bank's debts. In no aspect is it an asset of the holding company which can be collected and distributed among its creditors. What reason can exist requiring the state receiver to collect it and then require the bank's receiver to collect it from him.

This cumbersome method imposes against the shareholders the entire expense of the state receiver to collect the assessment which he will be required to turn over to the bank's receiver. There is no necessity to pursue such procedure. The article contemplates the payment of the assessment by the shareholder to the bank and not to the holding company. The assets of the holding company were not to be exhausted before calling on its shareholders, but the shareholders were to pay it without depleting the assets, if any, of the holding company. Therefore the state receiver has no real interest in the recovery, and the fund should not be subjected to unnecessary expense.

The statute creates the liability against the stockholders of national banks. USCA title 12, § 64, provides: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock."

USCA title 12, § 192, makes it the duty of the receiver to enforce the individual liability of the stockholders.

In a suit brought by him for that purpose, a stockholder is not permitted to defend on the ground that the bank is not insolvent nor the lack of necessity for the stock assessment. These are administrative matters determined by the Comptroller of the Currency and binding on the court in actions between the receiver and stockholders. Crawford v. Gamble, 57 F.(2d) 15 (C. C. A. 6); Liberty National Bank v. McIntosh, 16 F.(2d) 906 (C. C. A. 4); Deweese v. Smith, 106 F. 438, 66 L. R. A. 971 (C. C. A. 8), and affirmed 187 U. S. 638, 23 S. Ct. 845, 43 L. Ed. 344; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Christopher v. Norvell, 201 U. S. 216, 26 S. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740; Kennedy v. Gibson, 75 U. S. (8 Wall.) 498, 19 L. Ed. 476.

It was conceded that the First National Bank-Detroit owed its depositors greater liabilities when the bank was closed as a result of the Governor's proclamation than it owed at any subsequent date; that these debts were created by the bank and not by the conservator or receiver. The liabilities having been incurred by the bank, the statutory liability of the stockholders of the bank is an asset which the receiver can collect for the benefit of the creditors. The creditors are in no way responsible for the alleged shrinkage of assets by the allegedly illegal holidays, or by the acts of the conservator. The statutory liability of stockholders is immediately available for creditors when there are valid debts made by the bank and the Comptroller is satisfied that it is necessary to make the levy to satisfy the debts. It would be a novel proposition if a bank stockholder could defeat the creditors by showing the assets were dissipated through the acts of the officers appointed to administer them. Such a principle would make it necessary for the courts to review every act of such officers and make the cost of collecting the assessment greater than any amount that could be collected. The statute makes no provision for the relief of bank stockholders on account of dissipation of assets. But the liability is definitely created when there are valid debts of the bank and no funds available to pay them in full.

Therefore it is immaterial whether the bank was solvent on the dates of the state and national holidays and at the time of the appointment of a conservator, nor is it material whether the sale of a part of the assets by the conservator, which was approved by a court of competent jurisdiction, resulted in the insolvency of the bank. The sale did not create the debts and consequently could not release the liability of the bank stockholders. The allegations in these respects and the proof tendered in support thereof were immaterial to the main issues, did not, and could not, constitute a defense at law or in equity. Day v. United States, 245 U. S. 159, 38 S. Ct. 57, 62 L. Ed. 219.

What has been said assumes that the proof would sustain the allegations. This court deems it unnecessary to inquire into the legality of the holidays. Northern Pacific R. Co. v. American Trading Co., 195 U. S. 439, 25 S. Ct. 84, 49 L. Ed. 269. However, the bank officials closed the bank. If the holidays were illegal, then they were not legally compelled to obey, nor is it likely, in view of the national hysteria and loss of confidence in banks, due to widespread failures, that the result would have been different. Neither does the court concede that the stockholders can stand by until the conservator, with the approval of the court, sells a part of the assets, and then challenge the wisdom of the sale in a suit to enforce the statutory liability. It has been held that the failure of a receiver to realize all he could out of assets, his delay in collecting, do not constitute a proper defense to a subsequent assessment by the receiver. Beckham v. Hague, 38 Misc. 606, 78 N. Y. S. 79. Judge Sanborn in De-

weese v. Smith (C. C. A.) 106 F. 438, 445, 66 L. R. A. 971 (C. C. A. 8), affirmed 187 U. S. 638, 23 S. Ct. 845, 47 L. Ed. 344, in a case where the defense was based on an allegation that the assessment was to make good losses sustained by the receiver and for which the shareholders were not liable, said: "But this question is not open to litigation in this case. Under the acts of congress and the decisions of the courts to which reference has been made the comptroller of the currency constitutes a quasi judicial tribunal, to whose exclusive determination congress has intrusted the decision. * * * His decisions of questions within his jurisdiction are, like the decisions of the land department and of other quasi judicial tribunals, impervious to collateral attack, and open to avoidance by the court only in a direct attack upon them on the grounds of clear error of law, fraud, or mistake."

Other cases of like effect are Kennedy v. Gibson, 75 U. S. (8 Wall.) 498, 19 L. Ed. 476; Crawford v. Gamble, 57 F.(2d) 15 (C. C. A. 6); Miller v. Stock et al., 65 F.(2d) 773, 90 A. L. R. 1061 (C. C. A. 3).

It now becomes necessary to determine the nature of the ownership of the national bank stock by the Detroit Bankers' Company. The principle involved is identical with that in Laurent, Receiver of the Banco Kentucky Co., v. Anderson, Receiver, 70 F.(2d) 819 (C. C. A. 6) decided May 7, 1934, although the mechanics differ slightly. Here a corporate device was employed instead of trustees and trustee's certificates. The sacred halo of corporate entity and the consequent protection from personal liability for its debts are invoked as usual to accomplish a purpose of defense which was never contemplated when the corporation was created. It came into existence, it is true, under the laws of Michigan, but for a definite purpose to exchange its worthless stock for stock in national and state banks. It was not created to defeat statutory stock assessments. Its creators, the officers of the law, and the shareholders in the respective banks contemplated no lessening of security for bank creditors; indeed they did everything which the ingenuity of counsel could suggest for the protection of the bank's creditors, for which purpose article IX was placed in the charter and on each certificate of stock. The shareholder in the holding company knew what he was doing when he accepted his certificate of stock. He knew that he would share the profits, but he knew he assumed, along with all shareholders, his ratable portion of bank stock assessment.

The provision was inserted for the purpose of protecting the bank creditors and for no other purpose.

 In such circumstances, should the corporate entity of the holding company shield the shareholders from the assessment? If the individuals had incorporated to defeat the assessment, the law would disregard the corporate entity and enforce it without regard to the corporate fiction, or treat the corporation as a mere agency, holding the legal title for the beneficial owners. Corker v. Soper, 53 F.(2d) 190 (C. C. A. 5). Where individuals incorporate, as here, to preserve, and provide the means of enforcing, the assessment for the security of the bank's creditors, the corporate entity should not become a shield against such liability, but should be disregarded in law, if necessary, in order that such subterfuge should not succeed in nullifying statutes enacted to safeguard the banking public.

Generally, the primary purpose of incorporating is to limit the liability of the investors for corporate debts to the stock subscribed. The general principle is against further liability in the absence of statute. But this is not a general corporation operating under general rules. The situation is singular, and the principle must be considered in the light of such a situation.

It is well settled now, after years of conflict and confusion, that the corporate concept cannot be employed to evade a statute or to defeat its intent. United States v. Lehigh Valley Railroad Company, 220 U. S. 257, 31 S. Ct. 387, 55 L. Ed. 458. In such cases the courts treat it as a mere sham, a device, and a dummy. In United States v. Reading, 253 U. S. 62, 40 S. Ct. 425, 434, 64 L. Ed. 760, it is said: "Where such ownership of stock is resorted to, not for the purpose of participating in the affairs of the corporation in which it is held in a manner normal and usual with stockholders, but for the purpose of making it a mere agent, or instrumentality or department of another company, the courts will look through the forms to the realities of the relation between the companies as if the corporate agency did not exist and will deal with them as the justice of the case may require."

See, also, United States v. Delaware, Lackawanna & Western Railroad Company, 238 U. S. 516, 35 S. Ct. 873, 59 L. Ed. 1438, and United States v. Lehigh Valley Railroad Company, 254 U. S. 255, 41 S. Ct. 104, 65 L. Ed. 253.

In Northern Securities Company v. United States, 193 U. S. 197, 362, 24 S. Ct. 436, 467, 48 L. Ed. 679, where the stockholders of two competing railroads placed the control of both in one corporation organized for the purpose and in which the facts are very similar to the facts in this case, Justice Brewer in his concurring opinion, said: "In this case it was a mere instrumentality by which separate railroad properties were combined under one control. That combination is as direct a restraint of trade by destroying competition as the appointment of a committee to regulate rates. * * * The transfer of stock to the Securities Company was a mere incident, the manner in which the combination to destroy competition, and thus unlawfully restrain trade, was carried out."

The national banking law, prior to the Act of June, 1933, contemplated ownership and operation of national banks by individuals, and not by a holding company. Reference has been made to the statute imposing liability against the shareholder. Title 12, section 72, USCA, defines the qualifications of directors. He must be a citizen of the United States and must have resided in the state or within fifty miles of the location of the bank, for at least one year preceding his election, which qualifications must continue during his term in office. He must own in his own right at least ten shares of the capital stock. Any director who ceases to be the owner or becomes in any other manner disqualified shall thereby vacate his place.

Title 12, section 73, USCA, in prescribing the oath, among other things, requires that it shall show the qualifications required under section 72 and that the stock standing in his name is not hypothecated, or in any way pledged, as security for any loan or debt. It is utterly inconsistent with these laws for a holding company to acquire all the stock of a national bank, and control it in the manner shown by the evidence in this record, except on the theory that it existed as an agency for the stockholders of the bank, who are, to all intents and purposes, still stockholders therein, and liable as such stockholders for any bank stock assessment.

Prior to the organization of the holding company, the stockholders of this bank were individually liable for the stock assessment. They cannot destroy this liability and circumvent the statute by creating a holding company and by conveying their stock to it. If these bank stockholders who transferred their stock to the holding company for its stock will not be permitted to defeat the statute by such a scheme, do their assignees not assume the same status? Undoubtedly they do where the certificate of stock and all the corporate records reveal, as shown in this record, its true mission. If this device is permitted by the courts to defeat the assessment, individual stockholders in corporations whose stock is subject to a statutory liability will resort to this corporate plan and evade the statute. It is contrary to a sound public policy to permit such a beneficent statute affecting such a large portion of our people to be so completely nullified. Whenever the principal business of a corporation is to hold stock of this statutory liability class and is without capital or other substantial assets to respond to the statutory liability, the corporation should be disregarded and its stockholders held individually liable in proportion to the stock owned by them as the true and beneficial owners of the stock. It functions as a mere agency for the stockholders.

The law will unmask the apparent ownership of bank stock and fasten liability for the assessment on the "real" owner. Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423. If the mask is a corporate device, it will be removed like any other sham. Impotent indeed would be the law if it had to yield to principles applicable to corporations generally in the extraordinary circumstances presented here. Thus an owner who places his stock in the name of an agent will be forced to pay the assessment. McDonald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419. The decisions construing section 64 make it clear that the beneficial owner is the one intended by the statute. Williams v. Cobb (C. C. A.) 219 F. 663. All technicalities will be disregarded in order to reach the real owner. English v. Gamble (C. C. A.) 26 F.(2d) 28. It is not necessary that the real owner's name appear on the stock book. Corker v. Soper, supra.

■ The acceptance of this stock certificate was an assent by the shareholder to the terms of the contract assuming payment of the assessment. 2 Williston, Contracts, § 628, p. 1211. It is conclusive proof that the holder has contracted to be bound by the terms. Blue Mountain Forest Ass'n v. Borrowe, 71 N. H. 69, 51 A. 670; Jacobs v. Miller, 50 Mich. 119, 15 N. W. 42; Hassel v. Pohle, 214 App. Div. 654, 212 N. Y. S. 561; Commissioner of Banks v. Prudential Trust, 242 Mass. 78, 136 N. E. 410; Grand Rapids & Indiana Ry. Co. v. Osborn, 193 U. S. 17, 24 S. Ct. 310, 48 L. Ed. 598.

The stockholders contend that the promise to pay the assessment is a contract to answer for the default of another and is void under the statute of frauds because the certificate was not signed by the holder thereof nor by his agent. But the contracts and power of attorney authorizing the transfer are sufficient compliance with the statute, if the statute were applicable.

The statute, however, has no application here for several reasons: First. If the holding company is a mere agent for its shareholders, the debt is the debt of the principal and not of the agent. Townsley v. Sumrall, 2 Pet. 170, 7 L. Ed. 386; Kohn v. Bank, 15 Kan. 428; Harral v. Bridges (Tex. Civ. App.) 162 S. W. 1001. For an oral promise to pay one's own debt is not within the statute, although it results in the discharge of a debt for which another is liable. Mine Supply Co. v. Stockgrowers' Bank (C. C. A.) 173 F. 859; Bryant v. Rich's Estate, 104 Mich. 124, 62 N. W. 146. Second. It is well settled that the statute does not apply when the leading object of the promisor is to serve his own interest, thereby making his promise original, and not collateral. Hillman v. Hulett, 149 Mich. 289, 112 N. W. 918; Durgin v. Smith, 115 Mich. 239, 73 N. W. 361; Cincinnati Traction Co. v. Cole (C. C. A.) 258 F. 169; Davis v. Patrick, 141 U. S. 479, 12 S. Ct. 58, 35 L. Ed. 826. Third. A promise made to the debtor to discharge his debt does not come under the statute. Pratt v. Bates, 40 Mich. 37; Green v. Brookins, 23 Mich. 48, 9 Am. Rep. 74; Cincinnati Traction Co. v. Cole, supra. Fourth. An absolute promise to pay a debt of a third person does not fall within the statute. Gibbs v. Blanchard, 15 Mich. 292; Cincinnati Traction Co. v. Cole, supra. Fifth. A promise by the transferee of real or personal property, as the consideration for the transfer, to assume liability of the transferor, is not within the statute. In re Dresser (C. C. A.) 135 F. 495, affirmed 200 U. S. 532, 26 S. Ct. 316, 50 L. Ed. 584. Sixth. Under the facts of this record, the shareholders are now estopped to deny their liability or to set up the statute of frauds. Every outstanding share of stock in the holding company represents a proportionate part of the capital stock of the national bank. The holder of these shares of stock, or his predecessor, obtained it in exchange for stock against which was the statutory liability, and, after the exchange for his benefit, received dividends on the stock collected by the holding company out of the bank and turned over to him, and, during the period which elapsed from the creation of the holding company until the bank closed, the depositors, the creditors, and public officials were informed and relied upon the liability of the shareholders in the holding company. Without assuming this liability, the bank stock, in the first instance, could not have been exchanged in Michigan for holding company stock. Having held themselves out as assuming this liability to the injury of the bank's creditors and having enjoyed the benefits which accrued, it would be a fraud upon the bank's creditors to permit the shareholders to change their status or to escape liability by the plea of the statute of frauds. Judge Sanborn, in Illinois Trust & Savings Bank v. Arkansas City (C. C. A.) 76 F. 271, 293, 34 L. R. A. 518, stated the rule: "No principle is more universal in the jurisprudence of civilized nations, no principle is more equitable in itself, or more salutary in its effects, than that no one may, to the damage of another, deny the truth of statements and representations by which he has purposely or carelessly induced that other to change his situation." Dows v. Naper, 91 Ill. 44; Eisenberg v. Battenfield Oil Co., 251 Mich. 654, 232 N. W. 386; Kent v. Quick Silver Mining Co., 78 N. Y. 159.

What has been said as to the rights of the receiver of the holding company applies in like manner on the question of the right of the bank receiver to collect the assessment. According to the decisions in the federal courts, a third party beneficiary may sue in equity for the benefits under a contract. In re Wolf Mfg. Industry (C. C. A.) 56 F.(2d) 64; Princess Amusement Co. v. Wells (C. C. A.) 271 F. 226; Dater v. Anderson, 28 F. (2d) 994 (C. C. A. 6); Keller v. Ashford, 133 U. S. 610, 10 S. Ct. 494, 33 L. Ed. 667.

The law of Michigan seems to be to the same effect. Smith v. Thompson, 250 Mich. 302, 230 N. W. 156, 73 A. L. R. 1389; Johnson v. Bangs-McCutcheon, Inc., 260 Mich. 120, 244 N. W. 253; Hamburger v. Russell, 255 Mich. 696, 239 N. W. 267; Barnard v. Huff, 252 Mich. 258, 233 N. W. 213, 77 A. L. R. 259; Preston v. Preston, 205 Mich. 646, 172 N. W. 371.

While there is ample authority to uphold the conclusion herein stated, the facts here will admit of no other result. The stock in the holding company was issued, in part, upon the consideration of the holder assuming direct payment of the entire stock assessment which was to be enforced in the same manner and to the same extent as assessments on bank stock. It was not a promise to pay some one else's debt, but a liability assumed

as a part of the purchase price. The promise was for the benefit of the bank, one over which the holding company had no control. It could never enforce it in any court unless upon a showing that the assessment had been run against it and that the holder of the certificate had failed to perform his contract. The recovery would be for the sole benefit of the bank. The receiver of the holding company has not a cent of financial interest in the recovery. Therefore a federal court of equity is the court of proper jurisdiction to award relief in favor of the receiver of the bank who is the real party in interest, the one beneficially entitled to the recovery.

The facts in the case of Deming v. Schram are so similar to the facts in the case of Barbour v. Thomas, supra, with the same principles of law applying, that I deem it unnecessary to write any opinion other than as set forth above. Findings of fact and conclusions of law in this case were filed of record.