Madden, Judge,
delivered the opinion of the court:
The Government has demurred to the plaintiffs’ petition in each of these two cases. The petitions in the two cases make substantially the same allegations, except in regard to the particular alleged violations of law for which judgment is asked. The alleged violation in case No. 45956 has to do with attorneys’ fees paid to private attorneys who were employed by the receiver of a closed national bank. In case No. 45957 the alleged violation is the payment, out of the assets of the bank, of clerks employed in the Washington, D. C., office of the Comptroller of the Currency, for services rendered in connection with the affairs of the closed bank. The petitions are long. The allegations of No. 45956 will be first summarized.
The plaintiff Lucking had $7,500 on deposit in the First National Bank- — -Detroit, when it closed in 1933. He sues on behalf of himself and all the general depositors and creditors of the bank “as their interests may appear.” Lucking, as administrator of an estate, and Davis, the other plaintiff, in her own right, owned in 1933 about 1,000 shares in Detroit Bankers Company, thereby “being and becoming stockholders” in First National. The plaintiffs sue on their own behalf and also on behalf of all others who owned shares of Detroit Bankers Company in 1933.
First National is a national bank in Detroit, Michigan. Until it closed on February 11, 1933, it was doing a general banking business. Its deposits were in excess of $398,000,000 and its issued capital stock was of the par value of $25,-000,000. On May 11, 1933 the Comptroller of the Currency found the bank to be insolvent and appointed a receiver. The receivership still continues. In December 1942 the last of the bank’s physical assets were sold. All unsecured depositors have been paid more than 107 cents on the dollar and have released and satisfied their claims against the bank. The receiver and the Comptroller of the Currency are “expecting and hoping and intending, if possible” to close the liquidation of this “at all times solvent National Bank,” and to disburse a further fund of $4,000,000 now in the receiver’s *236 possession, for “as plaintiffs believe, more office and legal and extraordipary ‘expenses’ and so-called ‘costs of liquidation’ — without anybody, even Congress, ever finding out who gets it and what all this $18,000,000 to $20,000,000 of ‘expenses’ was for;” that “among and hidden in said total of ‘expenses’ or ‘costs of liquidation’ is the expenditure by said Receiver under the direction of said Comptrollers of the Currency and of the Secretary of the Treasury, in the years 1933 to 1942, of said $3,500,000 of the assets of said closed bank, for so-called attorneys’ fees and legal expenses.” On August 26, 1942 the plaintiffs by letter demanded of the Comptroller full information respecting the receiver’s attorneys’ fees such as would enable the plaintiffs “to bring proper action for the recovery of said $3,500,000 * * This information was not furnished by the Comptroller.
The receivership was “wholly unnecessary”; its results have been (1) the stockholders’ investment of over $300,000,-000 has been lost, (2) the new National Bank of Detroit acquired the bank’s goodwill for nothing, and has made ai profit of over $9,000,000 to date on its common stock acquired by the General Motors Corporation, which went illegally into the banking business, and (3) the closed bank’s stockholders have paid stock assessments of over $19,000,000 to the receiver who has spent to date about that sum in running the receivership.
Neither the receiver nor the Comptroller of the Currency has ever permitted a stockholder or depositor to inspect the books and records of the closed bank, or disclosed to them the details of the liquidation expenses. The receiver and the Comptroller placed the assets of the bank, including the $3,500,000 in question, in the United States Treasury, and then disbursed that sum, over the period from 1933 to 1942 to pay attorneys’ fees. The Secretary of the Treasury knew and approved of these disbursements. All three officers knew that this sum could not legally be used for that purpose. These officers have willfully disobeyed the Congress. Their acts and omissions were those of the United States.
Private attorneys were employed by the receiver of the closed bank, who paid them, in fees and expenses, for the period from 1933 to 1942 approximately $3,500,000 out of *237 the assets of the bank. These payments were illegal, excessive, “and made in secrecy and with studied intent to conceal and hide them.” The receivership has not been closed. No accounting has ever been made to the stockholders, to Congress, or to any court.
The plaintiffs ask for (1) a judgment against the United States for $3,500,000 and any other sums used from the assets of the bank to pay for private attorneys’ services in connection'with the liquidation of the bank, (2) for an accounting by the United States, as trustee, to the stockholders of the bank, (3) for inspection and discovery concerning the matters set forth in the petition, and (4) for such other relief as may be equitable and justly due to the plaintiffs and other stockholders.
In case No. 45957 there are the same allegations except that the matter specifically complained of is, instead of the question of attorneys’ fees, as in case No. 45956, the payment out of the closed bank’s assets of $1,251,000 for salaries of employees in the Insolvent National Bank Division of the Washington, D. C., office of the Comptroller of the Currency for the period from 1933 to 1940. It is alleged that these payments were “illegal and a gross breach of trust and in direct defiance and disregard and breach of the acts of Congress in such case made and provided” and, in addition, were “excessive and overcharged against said Bank by at least $750,000.” Tables of figures are given intended to show that the cost of this division was greater, in proportion to the banks closed and assets collected, in the years 1936 to 1939 than in the years 1933 to 1935. The relief sought in No. 45957 is the same as in No. 45956 except that the amount sought is $1,251,000 and any other sums from the assets of the closed bank used “for any salaries performed in the District of Columbia or at the ‘seat of Government’.” In both cases interest is asked.
The texts of various statutes which the plaintiffs deem pertinent are quoted in the petitions.
The principal bases for the plaintiffs’ claims are that, under the controlling statutes, the United States was required to pay out of its own funds (1) all charges for the services of attorneys who rendered services to the receiver *238 in connection with the liquidation of the First National Bank — Detroit, and (2) all clerical expenses for services rendered in Washington, D. C., in connection with the same liquidation. There are allegations that the amounts that were paid were excessive. But the principal contention is, as we have said, that no money whatever should have been taken out of the bank’s funds for these purposes. Since the bank’s liabilities to depositors alone was $398,000,000 when it closed, and more than enough was realized out of the bank’s assets to pay all these depositors, $19,000,000 of the amount having been realized from assessments levied upon shareholders in a holding company, and the receivership continued for some ten years, the amount of proper charges for necessary legal services was undoubtedly large. Why the public treasury should bear this expense is difficult to see. The most direct statutory provision relating to the subject is the following, which was derived from the National Bank Act of 1864:
* * * All expenses of any receivership shall be paid out of the assets of such [national banking] association before distribution of the proceeds thereof. E. S. § 5238,12 U. S. C. 196.
The plaintiffs point to other prolusions of the statutes such as the section relating to the duties of district attorneys to conduct suits arising under the banking laws, 5 U. S. C. 330, and others.
A similar legal problem is presented in regard to payment for clerk hire in the Insolvent National Bank Division of the Washington office of the Comptroller. That the conservation of the assets of the bank in Detroit required a great deal of work in Washington is plain. That this work was for the benefit of that bank’s creditors and stockholders, rather than the taxpayers generally, is also plain. Why the latter should pay for it, when the former get the benefit of it, is not plain. Again the Government points to the statute quoted above about the expenses of bank receiverships, and the plaintiffs point to certain statutory provisions forbidding the payment of clerks in Washington from sources other than the treasury, upon appropriation. See 5 U. S. C. 45, 46, and 66.
*239 These conflicts in the statutes present interesting, and perhaps difficult, questions, which seem not to have been raised before throughout a long period of the administration of the banking laws. Since we have concluded, as will appear below, that the plaintiffs do not show by their petitions that they have rights to bring these suits, even if their views as to the interpretation of the statutes are correct, we do not decide those questions. We find it necessary to consider only one of the grounds urged by the Government in support of its demurrer, i. e., that the plaintiffs do not, in their petitions, state facts showing that they are entitled to recover, either as individuals, or as members of a class of persons having interests similar to their own.
If one is, himself, not entitled to recover anything, he cannot, of course, conduct in his name a litigation for others, even if those others have rights which they as individuals could litigate, or which one or more members of the class of those who have rights could litigate for all of them. Such a litigant is a mere intermeddler, and no possible economy, which is the reason for permitting class suits, could result from such a procedure.
The only bases upon which a right in the plaintiff Lucking can be spelled out of the petitions are that (a) he was a depositor in the First National Bank — Detroit, at the time it closed in 1933, and (b) he was in 1933 and is a stockholder in the Detroit Bankers Company, thereby being a stockholder in the First National Bank — Detroit. We now consider whether he has any rights as a depositor. The petitions say that in December 1942 the last of the physical assets of the closed First National Bank — Detroit, had been sold, and the receiver had “paid all unsecured depositors of said * * * [bank] over 101 cents on the dollar, and they have released and satisfied their claims against said Bank in full.” On the basis of these statements the plaintiff has no claim against the bank as a depositor.
Both plaintiffs assert rights as stockholders in the First National Bank — Detroit, because of their ownership of shares in Detroit Bankers Company. The facts behind this legal conclusion, as disclosed in the plaintiffs’ briefs and argument *240 are as follows: The Detroit Bankers Company was a holding company, which owned all the stock in the First National Bank — Detroit, and several other banks. When it acquired these stocks, and issued shares in itself to the former owners of the shares in the banks, it was required by the authorities in the state of Michigan to print on each certificate of its shares a promise by the holder that he would be liable for his proportionate share of any statutory liability imposed on the holding company as the owner of shares in the banks. See Barbour v. Thomas, 7 F. Supp. 271, 273. On the basis of this promise, and of the conclusion that the holders of shares in the holding company were “shareholders” in the First National Bank — Detroit, within the meaning and purpose of the statute making shareholders in national banks liable to assessment, such assessments were enforced against shareholders in the holding company. Barbour v. Thomas, C. C. A. 6, 86 F. (2d) 510, certiorari denied, 300 U. S. 670. In a case in which the shareholders in a holding company had not expressly assumed liability for assessments on national bank stock held by it, the Supreme Court has recently reached the same conclusion. Anderson, Receiver, v. Abbott, Admx., 321 U. S. 349.
The legal conclusion, which the plaintiffs state in their petitions, that they were and are stockholders in the First National Bank — Detroit, because of their ownership of stock in the Detroit Bankers Company is erroneous. The enforcement against them of the liability of stockholders in First National, even apart from the express promise which they made when they acquired their shares in the holding company, shows only that they were “shareholders” in the bank in the sense that they came within the purpose and equity of the statute imposing liability. But for most, perhaps all, other purposes they were not shareholders in the bank at all. Certainly the holding company was the “shareholder” in the bank which was immediately and directly liable for the assessment. It was hopelessly insolvent after the failures of the banks whose stock it held, of which First National was one. Barbour v. Thomas, 7 F. Supp. 271 at 274. Yet to whatever extent the receiver of First National did not succeed in collecting from the holding company’s share *241 holders the assessments for which that company itself was directly liable, it remained liable. If its shareholders were really, as the plaintiffs allege in their petitions, the stockholders in First National Bank — Detroit, they would have a right to any assets of First National left over after its debts were paid. But in fact, any such assets would go to the holding ■ company, to be used first to pay its creditors, and only after they were paid would there be anything for the stockholders. The one, therefore, who has the primary interest in conserving the assets of the First National Bank — Detroit, if the receiver of that bank refuses to do his duty, is the receiver of the Detroit Bankers Company, which owns all of the stock of First National. The plaintiffs make no showing that they have called in vain upon him.
The plaintiffs, in an appendix to their reply brief, quote some testimony taken in another litigation indicating that the certificates of the stock of First National Bank — Detroit, which was owned by Detroit Bankers Company had been deposited with the receiver of First National as custodian for the shareholders of Detroit Bankers. Even if we permit the plaintiffs’ petitions to be supplemented by these bits of testimony, we have no idea as to either the purpose or the legal effect of this deposit of the stock. We cannot presume that it put the shareholders in Detroit Bankers in a position where they would have a better right than the creditors of that company, in any assets of First National which might’ remain after its debts were paid. Unless we do so presume,[1] the plaintiffs’ positions are not improved by the material in the appendix.
We conclude, therefore, that the plaintiff Lucking, as a former depositor in First National, has no interest in the assets of that bank because he has been paid and has released the bank from any further liability; that both plaintiffs, as stockholders in the holding company which owned the stock of First National, are some steps removed from the position from which litigation such as is involved in these petitions should be conducted, and have made no showing of the necessity for their being permitted to act in the place of those who would, normally, conduct such litigation.
*242 We do not pass upon the other grounds relied on by the Government in support of its demürrers. The demurrers are sustained and the petitions dismissed. It is so ordered.
Whitaker, Judge; LittletoN, Judge; and Whalet, Chief Justice, concur.
JoNes, Judge, took no part in the decision of this case.
ON MOTIONS TO FILE AMENDED PETITIONS
(Decided February 5, 1945)
Madden, Judge,
delivered the opinion of the court.
The court having sustained the Government’s demurrers to the plaintiffs’ petitions in these cases, the plaintiffs have, by motions, asked leave to file the amended petitions which accompany the motions. The Government has filed objections to the plaintiffs’ motions.
In sustaining the demurrers to the plaintiffs’ petitions, the court held that the petitions did not show that the plaintiffs had a right to maintain suits on behalf of themselves and the other stockholders in the First National Bank-Detroit; that they were not stockholders in that bank, but were stockholders in the holding company, Detroit Bankers Company, which owned the stock of First National; that Detroit Bankers Company was insolvent and in receivership; that if claims of First National against the Government, such as were asserted in the plaintiffs’ petitions, were collected, the money would go in the first instance to pay the creditors of Detroit Bankers; that the Receiver of Detroit Bankers was the person whose duty it was to enforce such claims, if they had merit, and if First National or its Receiver or Directors neglected to enforce them; that, so far as the petitions showed, the plaintiffs had not called in vain upon the Receiver of Detroit Bankers.
In the amended petitions which the plaintiffs ask leave to file, they say that after our decision of December 4, 1944, they, on December 29, 1944, filed their petition or motion in *243 the Circuit Court for the County of Wayne, Michigan, in the Detroit Bankers Company receivership case, and asked that court to reopen the receivership and reappoint the Receiver therein and give him authority to intervene in the two cases in this court, and, with the plaintiffs, prosecute those cases to determination; that the Circuit Court for the County of Wayne held that the reopening of the receivership was not necessary; that the plaintiffs, as class plaintiffs, were authorized and fully able and competent to represent all creditors (if any) and all stockholders of the Detroit Bankers Company and of the First National Bank-Detroit, as though the receiver was reappointed and intervened as a coplaintiff in the cases pending in this court. The plaintiffs attach to their proposed amended petitions a copy of their petition in the Circuit Court for the County of Wayne, as Exhibit A, and a copy of that court’s order dismissing their petition without prejudice, as Exhibit B.
I
The amended petitions tendered with the motions are not amended petitions because they show on their face that the causes of action, if any, stated in them arose long after the filing of the original petitions, and some weeks after our decision sustaining the demurrers to the original petitions. In that decision we held, as we have said above, that the plaintiffs had no right to maintain a class or representative suit without first calling on the receiver of Detroit Bankers Company, whose duty it was to realize the assets of that company for its creditors and stockholders, to perform that duty. That the plaintiffs’ omission to allege such a demand in their original petitions herein was not inadvertent is shown by their representation in paragraph IX of their petition to the Circuit Court of Wayne County, filed December 29, 1944, which is Exhibit A to their tendered amended petitions, and which says:
Upon information that prior to December 4,1944, this Court’s Receivers herein and their counsel had no knowledge of the claims and rights set forth and put in issue *244 in said two Court of Claims petitions marked Exhibits A and B.[1]
It is apparent, therefore, on the face of the proposed amended petitions that the plaintiffs have no cause of action prior to December 4,1944. Their petitions should, therefore, be tendered as original petitions, so that such questions as the applicability of the statute of limitations can be determined without confusion concerning the dates when the suits were brought.
II
In our view, the proceedings in the Circuit Court for the County of Wayne do not remedy the defect which, we found, was fatal to the plaintiffs’ original petitions. If we may infer from the petition and order in that court which the plaintiffs attach to their tendered amended petitions that the plaintiffs, after our decision sustaining the demurrers, demanded of the Receiver for the Detroit Bankers Company that he bring suit to collect these potential assets, it does not appear that the Receiver refused to do so. The Government, with its objections to the pending motions, furnishes us a transcript of the discussion which occurred in the Circuit Court for the County of Wayne on the plaintiffs’ petition there and before that court made its order. It appears from that transcript that the Receiver took no position at all as to whether the claims which the plaintiffs were making on behalf of the stockholders had merit. If he thought they had, one would suppose that he would have joined the plaintiffs in requesting the reopening of the receivership, so that proper steps could be taken to realize these large sums for creditors and stockholders. If he thought the claims had no merit, one would suppose he would have said so for the guidance of the court. If, as would have been natural, he had no opinion as to whether they had merit or not, since he had learned of them only a few days, if at all, before the hearing in that court, one would suppose that he would have asked for time to study the questions, rather than to turn *245 over to volunteers a responsibility which was his own, i. e., the recovery of assets of the insolvent for which he was receiver. The Keceiver did not, therefore, refuse to prosecute the claims.
The Circuit Court for Wayne County was asked to authorize its Keceiver, not to bring suit on these claims, but to “intervene in said two above causes at bar and prosecute the same (with said plaintiffs) to final determination on the merits.” It is not surprising that the Court, and, if we may so infer, the Keceiver, were not willing to adopt proceedings initiated by volunteers without even informing the Keceiver or the Court of them, and jointly with the volunteers, carry the proceedings forward.
It appears from the order of the Circuit Court for Wayne County that the Judge entertained views concerning the rights of stockholders to sue which are different from those expressed by this court in its decision sustaining the demurrers to the original petitions. We have reconsidered the question and have again come to the conclusion that stockholders of an insolvent corporation do not have the right to prosecute class or representative suits to recover alleged claims of the corporation without first calling on those whose duty it is to collect such claims.
Since the tendered amended petitions contain the same defects as the original ones, to which we sustained demurrers, no useful purpose would be served by permitting them to be filed.
The plaintiffs’ motions are denied.
Whitaeer, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.

 These were the original petitions in this court, demurrers to which petitions we sustained on December 4, 1944.